UNITED STATES of America, Appellee,

v.

Phillip F. ROBINSON, Defendant,
Appellant.

No. 97–2185.

United States Court of Appeals,
First Circuit.

Heard April 9, 1998.

Decided May 8, 1998.

Margaret E. Curran, Assistant United States Attorney, with whom Sheldon Whitehouse, United States Attorney, and Richard W. Rose, Assistant United States Attorney, were on brief, for appellee.

Michael J. Lepizzera, Jr., by appointment of the court, for appellant.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

This appeal features a dispute about the extent to which scientific evidence must be adduced at sentencing before the court can impose the onerous penalties attached to trafficking in crack cocaine. We pause first to set the stage and address another, more mundane issue. We then proceed to the sentencing question.

## I. BACKGROUND

On January 6, 1997, Providence police officers obtained a warrant authorizing them to search residential premises located at 151 Reynolds Avenue for cocaine, money, and other articles related to the sale or use of narcotics. In securing the warrant, the gendarmes relied on input from a confidential informant (CI–1), thought by them to be reliable, who not only provided information but also made a controlled purchase of cocaine from the subject premises a few days before the warrant issued. According to CI–1, the person primarily responsible for the drug-distribution activity was "Louie," a dark-haired Hispanic male approximately five feet eight inches tall and of medium build.

Upon entering the premises, officers discovered cocaine in a pair of pants that were lying on the bed in which defendant-appellant Phillip F. Robinson was sleeping. Drugs also were found on the kitchen table and in an unoccupied bedroom. The police arrested the appellant and his mother, Carolyn Robinson, and a federal grand jury later indicted both individuals for possessing cocaine base, intending to distribute it, and conspiring to commit that offense. *See* 21 U.S.C. §§ 841(a)(1), 846 (1994).

After the initial arrest, the police sought another search warrant for 151 Reynolds Avenue. They based the application for this warrant on information from a second confidential informant (CI–2), who vouchsafed that drug trafficking had continued at the premises notwithstanding the appellant's detention. The warrant issued, but the neoteric search proved a waste of time.

During pretrial proceedings, the appellant moved for disclosure of the identities of both

confidential informants. The district court denied the motion. In the ensuing trial, the jury convicted the appellant on both charges.[1]

At the disposition hearing, the key issue centered around whether the appellant's offenses involved crack cocaine as opposed to powdered cocaine. The district court, relying principally upon two pieces of evidence— a pharmacologist's laboratory report attesting that the seized drugs had the chemical composition of cocaine base and the testimony of Detective Daniel Gannon, an experienced narcotics investigator, that the contraband was indeed crack—resolved this dispute in the government's favor and sentenced Robinson accordingly. This appeal followed. In it, the appellant challenges both the trial court's denial of his motion for disclosure and its sentencing determinations.

## II. THE DISCLOSURE MOTION

■ We review a district court's decision not to force the prosecution to divulge the identity of a confidential informant for abuse of discretion. *See United States v. Lewis*, 40 F.3d 1325, 1335 (1st Cir.1994). In this context, the abuse of discretion standard is quite deferential: the district court's resolution of a disclosure request should be upheld as long as it comports with some reasonable rendition of the record. *See United States v. Bender*, 5 F.3d 267, 269 (7th Cir.1993).

■ The Supreme Court first recognized a tattler's privilege—that is, a privilege to withhold the identity of an informant—in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The privilege is designed to protect the government's sources and to shield citizens who contribute their knowledge to facilitate the prosecution of criminal acts. Still, the tattler's privilege is not absolute. In determining whether justification for an exception exists, the nisi prius court must balance the interests undergirding the privilege against the accused's fundamental right to a fair trial, and, in doing so, must take into account the full panoply of relevant circumstances (including the nature of the crime charged, the contours of the

defenses asserted, the available means of proving the charges and defenses, and the significance of the informant's role). *See id.* at 62, 77 S.Ct. at 628–29; *United States v. Martinez*, 922 F.2d 914, 920–21 (1st Cir. 1991); *United States v. Giry*, 818 F.2d 120, 130 (1st Cir.1987).

■ To further the policies behind the *Roviaro* rationale, the trial court's analysis begins with a presumption favoring confidentiality. Thus, the defendant must carry the devoir of persuasion to show that disclosure is necessary to mounting an adequate defense. *See Lewis*, 40 F.3d at 1335; *Giry*, 818 F.2d at 130. This burden is heavy, but not intractable. If, for example, the informant is the sole participant, other than the accused, in the transaction charged, or if the informant is the only person who is in a position to amplify or contradict crucial testimony of government witnesses, then the court may order disclosure. *See Roviaro*, 353 U.S. at 64, 77 S.Ct. at 629–30; *Martinez*, 922 F.2d at 920–21; *United States v. Bibbey*, 735 F.2d 619, 621 (1st Cir.1984). If, however, the informant is merely a source—one who does little more than put a flea in an officer's ear—the court almost always will deny disclosure. *See Lewis*, 40 F.3d at 1335; *United States v. Batista–Polanco*, 927 F.2d 14, 19–20 (1st Cir.1991).

■ Here, the appellant alleges that the confidential informants' identities would have been helpful in his defense. He notes that CI–1 identified a suspect named Louie as the person who was selling large quantities of cocaine at 151 Reynolds Avenue; that he obviously is not Louie (after all, the appellant is a six foot tall Caucasian who weighs 300 pounds—a far cry from a five foot eight inch Hispanic of medium build); that his most promising defense involved pointing a finger at Louie; and that, through CI–1, he might have discovered Louie's identity, or, at least, focused the jury's attention on a suspect other than himself. The appellant adds that he also needed to know CI–2's identity because CI–2 could testify that another cocaine transaction took place at 151 Reynolds Avenue after he (Robinson) was detained. The

---

1. The jury similarly convicted Carolyn Robinson, but only Phillip Robinson's appeal is before us.

appellant claims that this information would lend credence to the idea that Louie was the real culprit.

The appellant says that the facts of this case mandate disclosure under our decision in *Zaroogian v. United States*, 367 F.2d 959 (1st Cir.1966). We demur. Assuming, without deciding, that *Zaroogian* remains good law, the rule elucidated there applies only when a defendant shows that an informant would make a valuable material witness for the defense. *Id.* at 962. The appellant has not made such a showing.

Here, the informers' evidence, though desired by the appellant, was peripheral to the crimes charges. In the last analysis, the jury convicted Robinson based not on what CI–1 or CI–2 said or did, but on his culpable presence at a locus where substantial amounts of contraband were found.[2] Neither CI–1 nor CI–2 could be expected to shed much light on these circumstances. Furthermore, even if the elusive Louie existed and could be run to ground, a showing that Louie was guilty would not exonerate the appellant. Hence, learning Louie's identity would be only marginally relevant, if relevant at all, to the charges confronting Robinson.

■ Where, as here, the government's informants neither participated in nor witnessed the events that inculpated the defendant and led to his arrest, the informants ordinarily are deemed mere tipsters. *See, e.g., Martinez*, 922 F.2d at 921; *Giry*, 818 F.2d at 130; *United States v. Alonzo*, 571 F.2d 1384, 1387 (5th Cir.1978). There is nothing in the record that removes this case from the sweep of that generalization. Moreover, we have held with a regularity bordering on the echolalic that tipsters, as

opposed to informants who are active participants in the crimes charged, generally deserve anonymity. *See, e.g., Martinez*, 922 F.2d at 921; *Giry*, 818 F.2d at 130; *United States v. Hemmer*, 729 F.2d 10, 15 (1st Cir. 1984). Consequently, the lower court did not abuse its discretion in refusing to force the government to divulge the informants' identities.

## III. SENTENCING

■ The appellant's sentencing challenge links various asseverations, all of which implicate the district court's determination that the offenses of conviction involved crack cocaine as opposed to powdered cocaine. We treat these asseverations as a single forensic unit.[3]

The federal sentencing guidelines penalize trafficking in crack cocaine much more harshly than trafficking in cocaine hydrochloride (cocaine powder). *See United States v. Armstrong*, 517 U.S. 456, 476–78, 116 S.Ct. 1480, 1492, 134 L.Ed.2d 687 (1996). After an evidentiary hearing, the district court computed the appellant's offense level on the basis that all the contraband—35.33 grams (including an amount attributable to the conversion of the cash seized, *see* USSG § 2D1.1, comment. (n.12))—was crack cocaine. This determination yielded a guideline sentencing range (GSR) of 108 to 135 months, and the judge imposed a 121–month incarcerative sentence.

In this court, as below, the appellant challenges the premise on which his sentence rests. He maintains that the government proved nothing beyond the fact that the substance was cocaine base and that, therefore,

---

**2.** Carolyn Robinson owned the Reynolds Avenue house and, in January 1997, resided there with her three sons (Phillip included) and a transient guest. In the course of the January 6 search, the police found 14 "baggies" of cocaine on the kitchen table; a handgun, ammunition, digital measuring scales, and $1,800 in cash in Carolyn Robinson's bedroom; and 21 "baggies" of cocaine in a pair of pants in the appellant's bedroom. The jury easily could have inferred that the pants belonged to the appellant: he, himself, was sleeping in the room, and his wallet, containing a driver's license in his name and a beeper registered to him, were found in the pants. In yet another bedroom, the police found

two small bags of cocaine and a second driver's license in the appellant's name.

**3.** In a passing reference in his brief, the appellant also impugns the district court's conversion of $1,800 found in Carolyn Robinson's bedroom into its drug equivalent and the court's inclusion in the drug quantity calculation of amounts of cocaine not found in the appellant's bedroom. These arguments are wholly undeveloped and we deem them waived. *See United States v. Bongiorno*, 106 F.3d 1027, 1034 (1st Cir.1997); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

his offense level should have been set on the basis of cocaine hydrochloride (which would have produced a GSR of 18 to 24 months and led to a much gentler sentence). This argument takes dead aim at the district court's admission of detective Gannon's testimony to the effect that the hard, rock-like substance found on the premises was crack. In the appellant's view, Gannon, who has no formal scientific training, was unqualified to render such an opinion.

We start with the Sentencing Commission's handiwork. Since 1993, the Commission has acknowledged that, in common parlance, "cocaine base" means "crack," and that this equivalency is cognizable for purposes of computing a defendant's GSR. USSG § 2D1.1(c)(n.(D)). The Commission further defines crack as "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." *Id.* Forms of cocaine base other than crack are treated as cocaine hydrochloride for purposes of calculating the GSR. *See* USSG App. C, Amend. 487; *see also United States v. Abdul,* 122 F.3d 477, 479 (7th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 643, 139 L.Ed.2d 621 (1997).

To implement these directions, it is important to grasp certain rudimentary facts. Cocaine base (C17H21NO4) is a natural alkaloid found in the coca leaf. It is a "base" because it reacts with acids to produce a salt. The naturally occurring compound is usually processed by dissolving a paste made from the coca leaf in hydrochloric acid (HCl) and water (H2O) to create a salt: cocaine hydrochloride (C17H22ClNO4), also known as cocaine (in its powdered form). The salt is water-soluble and may be snorted or dissolved in a liquid and injected, but it cannot be smoked.

There are several ways to convert this salt into a base. The most common method is to dissolve the salt in baking soda (NaHCO3) and water (H2O) and boil the mixture until it solidifies and dries. The resulting substance is chemically identical to a naturally occurring cocaine base. In appearance, however, the substance is hard and rock-like. This artificially manufactured base is known in the vernacular as "crack" or "crack cocaine."

*See Abdul,* 122 F.3d at 478; *United States v. Sloan,* 97 F.3d 1378, 1382 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2459, 138 L.Ed.2d 216 (1997). Although crack is not water-soluble, it can be smoked.

■ Against this backdrop, the district court's admission of detective Gannon's testimony is fully supportable. The Federal Rules of Evidence do not pertain during the sentencing phase of a criminal trial. *See United States v. Gonzalez–Vazquez,* 34 F.3d 19, 25 (1st Cir.1994). Rather, the sentencing court may consider evidence that would be inadmissible at trial as long as that evidence possesses "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a). Under this generous formulation, the court has wide latitude to decide what type of proof is, or is not, sufficiently trustworthy to enter into the sentencing calculus. *See United States v. Brewster,* 127 F.3d 22, 27 (1st Cir.1997); *United States v. Tardiff,* 969 F.2d 1283, 1287 (1st Cir.1992).

■ In this case, the district judge acted within her discretion in allowing Gannon's testimony. Even in a trial setting, we often have permitted law enforcement officers, not formally trained as "experts," to furnish opinions based on their real-world experience. *See, e.g., United States v. Valle,* 72 F.3d 210, 215 (1st Cir.1995) (noting that courts regularly allow testimony from experienced narcotics agents anent matters such as "dosages, prices, and other particulars endemic to the ingestion and distribution of crack cocaine"); *United States v. Rivera,* 68 F.3d 5, 8 (1st Cir.1995), *cert. denied,* 516 U.S. 1139, 116 S.Ct. 970, 133 L.Ed.2d 891 (1996); *United States v. Tejada,* 886 F.2d 483, 486 (1st Cir.1989). This is merely a reflection that "[e]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies." *United States v. Hoffman,* 832 F.2d 1299, 1310 (1st Cir.1987). By like token, "proof based upon scientific analysis or expert testimony is not required to prove the illicit nature of a substance." *United States v. Valencia–Lucena,* 925 F.2d 506, 512 (1st Cir. 1991); *accord United States v. Walters,* 904 F.2d 765, 770 (1st Cir.1990); *United States v. Paiva,* 892 F.2d 148, 157 (1st Cir.1989);

*United States v. Ladd,* 885 F.2d 954, 960 (1st Cir.1989).

These precedents are persuasive here. The government laid a proper foundation for Gannon's testimony by introducing a chemical analysis in the form of a pharmacologist's report proving that, chemically, the contraband was cocaine base.[4] Chemical analysis cannot distinguish crack from any other form of cocaine base because crack and all other forms of cocaine base are identical at the molecular level. Thus, no further scientific testimony would have been of any conceivable assistance, and we will not require the government to indulge in an empty exercise.

This brings us to Gannon's testimony. The sentencing judge did not specify whether she admitted this testimony as a lay opinion or as an opinion proffered by an expert who possessed practical as opposed to academic credentials, probably because the distinction is immaterial for purposes of this case. Either way, it is clear that the sentencing court has discretion to admit the opinion evidence of a reliable witness who possesses specialized knowledge (here, experience in dealing with crack and familiarity with its appearance and texture). *See Paiva,* 892 F.2d at 160; *Ladd,* 885 F.2d at 959–60.

Such testimony is particularly helpful in a case like this one. Crack can be differentiated from other cocaine bases only by appearance and texture, and the applicable guideline, which refers to crack as "the street name" for a particular form of cocaine base, USSG § 2D1.1(c)(n.(D)), strongly suggests that knowledge of what dealers and users consider to be crack may be a satisfactory experiential base for opinion evidence. Gannon, a veteran narcotics investigator who worked undercover for several years as both a "seller" and a "buyer" in sting operations, had an intimate familiarity with the crack trade. Accordingly, the district court did not err in permitting him to identify a particular substance as crack cocaine. *See Hoffman,* 832 F.2d at 1310 (upholding admission of opinion testimony offered by "veteran DEA agent" and noting that "[i]n a rough-and-

ready field such as [hard-core drug trafficking], experience is likely the best teacher").

■ Despite this conclusion, our journey must continue. The appellant also contends that the district court erred in finding that the contraband was crack. This contention need not occupy us for long.

■ Whether a particular substance is crack or cocaine for purposes of the sentencing guidelines is a question of fact to be determined by the court. *See Edwards v. United States,* — U.S. —, — – —, 118 S.Ct. 1475, 1476–77, 140 L.Ed.2d 703 (1998). When the nature of an illicit substance is material at sentencing, the government has the burden to prove the substance's identity, but its proof need only be by a preponderance of the evidence. *See United States v. Legarda,* 17 F.3d 496, 499 (1st Cir.1994); *Tardiff,* 969 F.2d at 1289. The sentencing court's factfinding must be accepted unless it is clearly erroneous. *See United States v. St. Cyr,* 977 F.2d 698, 701 (1st Cir.1992); *United States v. David,* 940 F.2d 722, 739 (1st Cir.1991).

Here, Judge Lisi's factfinding is amply supported. The government introduced the pharmacologist's laboratory report to establish the chemical composition of the substances seized from the searched premises. The report identified the substances as cocaine base. Detective Gannon, drawing on his experience and remarking the appearance and hard, rock-like texture of the cocaine base seized from 151 Reynolds Avenue, identified it as crack. Finally, the appellant testified at the disposition hearing and, although he denied that he sold drugs from his abode, he admitted that he intended to sell the packets of drugs seized from his pants pocket, and that he bought and sold "rock." On the strength of this proof, and in the utter absence of any controverting evidence, Judge Lisi's finding easily survives clear-error review.

4. The pharmacologist, Paul Breault, had testified at the trial, and the district court, in addition to admitting Breault's report at the disposition hearing, took judicial notice of his trial testimony.

## IV.  CONCLUSION

We need go no further.  For aught that appears, the appellant was fairly tried and appropriately sentenced.  We add only one small coda: although the guidelines punish offenders who traffic in crack cocaine very severely, especially in relation to those who traffic in powdered cocaine, that is a permissible policy choice articulated by Congress and the Sentencing Commission.  Therefore, the courts are obliged to give it effect.

*Affirmed.*