<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

      [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1896

                         UNITED STATES,

                           Appellee,

                               v.

                        THEODORE PERRY,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF RHODE ISLAND

            [Hon. Mary M. Lisi, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                Selya and Lynch, Circuit Judges.

                     _____________________

   Geoffrey DuBosque for appellant.
   Thomas M. Gannon, Attorney, Department of Justice, with whom
Margaret E. Curran, United States Attorney, and Gerard B. Sullivan,
Assistant United States Attorney, were on brief, for appellee.

                      ____________________

                         April 28, 1999
                      ____________________

        Per Curiam.  Defendant-appellant, Theodore Perry, appeals
his conviction for possessing a firearm in violation of 18 U.S.C.
922(g)(1).  We affirm in all respects.
        We set forth the facts as a reasonable jury could have
found them to be.  On July 3, 1997, uniformed Providence police
officer Anabel Bez was working in a marked police cruiser in
Providence's West End.  Bez received a call about two men who were
suspected of selling drugs.  Both were described as African-
American and wearing white T-shirts; one was wearing red pants, the
other blue pants.  In response to the call, Bez radioed Officer
Edward Gonzlez, met with him, and arranged to converge with him on
the Cranston-Dexter intersection.
        When Officer Bez arrived at the intersection, he saw the
two men who had been described in the call.  Perry was one of the
men, and Wesley Lucas was the other.  As Bez parked his cruiser on
Cranston, he saw Officer Gonzlez's cruiser coming towards him
along Cranston.  Gonzlez parked his cruiser nose-to-nose to
Bez's, directly in front of the two men.
        The men turned and began to walk away.  Officer Bez got
out of his car and told the men to stop.  Lucas stopped, but Perry
ran away.  Officer Gonzlez pulled his cruiser around the corner
onto Dexter Street and blocked Perry's escape. When Perry saw
Gonzlez blocking his path, he ducked into a clump of bushes and
discarded a handgun.  Gonzlez shouted, "Gun!", but Bez did not
hear him.  When Perry emerged from the bushes, he was directly in
front of Bez, who arrested him.
        Officer Bez drove the cruiser around the corner to
Officer Gonzlez's car.  Gonzlez went into the bushes and located
the discarded handgun.  When Bez joined him there, he showed Bez
the gun on the ground deep in the bushes.  As the two officers were
looking at the handgun, they heard the sound of breaking glass.  
Perry had kicked out the back window of Bez's cruiser, and was
running down Dexter Street.  Gonzlez chased him and recaptured him
immediately.  The officers called their sergeant and Detective
Robert Badessa to the scene.  Badessa took photographs of the scene
and seized the gun, a Bryco Jennings .380 caliber pistol.
        Following a jury trial in the United States District
Court for the District of Rhode Island, Perry was convicted of
possessing a firearm as a previously convicted felon.  The district
court sentenced him to a term of 77 months imprisonment to be
followed by a three year period of supervised release.
        Perry's first argument is that the prosecutor committed
reversible error in his closing argument by stating: (1) that the
defendant was a wife abuser, and (2) that the defendant testified
to a different version of the truth.  At first blush, these
comments seem to fall within the pale: the "wife abuser" reference
related to evidence of a prior conviction, and the second comment
appears sufficiently neutral to avoid classification as
impermissible vouching.
        Even if we assume arguendo the validity of the
defendant's assertions, we are constrained by the fact that the
defendant did not interpose a contemporaneous objection to these
statements during the course of the prosecutor's closing argument.  
Accordingly, we review only for plain error.  Error rises to this
level only when it "so shocking that it seriously affected the
fundamental fairness and basic integrity of the proceedings
conducted below."  United States v. Ortiz, 23 F.3d 21, 26 (1st Cir.
1994) (internal quotation marks and citations omitted).
        Here, the statements complained of fall far short of the
plain error threshold.  They do not in any way interfere with the
jury's ability to resolve the paramount issue in this case --
whether Perry possessed a firearm.  Moreover, they were followed by  
instructions from the district court advising the jury: (1) that
statements by counsel are not evidence and are not to be considered
in reaching a verdict, and (2) that it is the responsibility of the
jury to weigh the credibility of witnesses.  In light of this fact,
and the overwhelming evidence of Perry's guilt, there is no basis
for this Court to conclude that the alleged erroneous statements by
the prosecutor in his closing argument resulted in a miscarriage of
justice meriting a reversal.  See United States v. Giry, 818 F.2d
120, 133 (1st Cir.), cert. denied, 484 U.S. 855 (1987).
        Perry's second argument is that he was denied his right
to a fair trial because the district court refused to divulge the
identity of, or conduct an in camera examination of, the informant
who called the police.
         We review a district court's decision not to force the
prosecution to divulge the identity of a confidential informant for
abuse of discretion.  See United States v. Lewis, 40 F.3d 1325,
1335 (1st Cir. 1994). In this context, the abuse of discretion
standard is quite deferential:  the district court's resolution of
a disclosure request should be upheld as long as it comports with
some reasonable rendition of the record.  See United States v.
Robinson, 144 F.3d 104, 106 (1st Cir. 1998).
        The Supreme Court first recognized a "tattler's
privilege" -- that is, a privilege to withhold the identity of an
informant -- in Roviaro v. United States, 353 U.S. 53 (1957).  See
Robinson, 144 F.3d at 106.  The privilege is designed to protect
the government's sources and to shield citizens who contribute
their knowledge to facilitate the prosecution of criminal acts.
Still, the privilege is not absolute.  In determining whether
justification for an exception exists, the nisi prius court must
balance the interests undergirding the privilege against the
accused's fundamental right to a fair trial, and, in doing so, must
take into account the full set of relevant circumstances --
including the nature of the crime charged, the contours of the
defenses asserted, the available means of proving the charges and
defenses, and the significance of the informant's role.  See id.
        To further the policies behind the Roviaro rationale, the
trial court's analysis begins with a presumption favoring
confidentiality.  Thus, the defendant bears the burden of
persuasion to show that disclosure is necessary to mount an
adequate defense.  See id.  This burden is heavy, but not
insurmountable.  See id.  If, for example, the informant is the
sole participant, other than the accused, in the transaction
charged, or if the informant is the only person who is in a
position to amplify or contradict crucial testimony of government
witnesses, then the court may order disclosure.  See id.
        Here, Perry moved for disclosure of the identity of the
person who called Officer Bez on July 3, 1997, to tell him about
two African-American men suspected of selling drugs at the
Cranston-Dexter intersection.  At the hearing before the district
court, the prosecutor stated that a detective had interviewed the
informant and confirmed that the informant saw neither the chase of
Perry, nor his arrest, nor the discarding of the gun.  The district
court noted that the informant had called the police to report
suspected drug dealing, but the crux of the case was whether or not
Perry possessed a firearm.  Finding that the informant was akin to
a tipster, it denied Perry's motion to disclose the informant's
identity.
        In this instance, because the government's informant
neither participated in nor witnessed the events that inculpated
the defendant and led to his arrest, the informant is a mere
tipster.  See id.  Tipsters, as opposed to informants who are
active participants in the crimes charged, generally deserve
anonymity.  See United States v. Hemmer, 729 F.2d 10, 15 (1st Cir.
1984). The district court did not abuse its discretion in refusing
to force the government to divulge the informant's identity.
        Third, Perry argues that the district court committed
error in interpreting the Sentencing Guidelines to the extent that
Perry's sentence was imposed consecutively to his state sentence
for violating his state probation.
        Appellate review of a district court's application of the
Sentencing Guidelines involves a bifurcated inquiry.  We review de
novo a sentencing judge's assessment of a guideline's legal meaning
and scope, but review the district court's factfinding only for
clear error.  See United States v. Florence, 143 F.3d 11, 12 (1st
Cir. 1998).  Within certain limits, a district court's decision to
impose a concurrent or consecutive sentence is reviewed for abuse
of discretion.  See United States v. McCarthy, 77 F.3d 522, 536
(1st Cir.), cert. denied, 117 S. Ct. 479 (1996).
        Sentencing Guidelines  5G1.3 governs the "Imposition of
Sentence on a Defendant Subject to an Undischarged Term of
Imprisonment."  Most importantly, application note 6 to  5G1.3
provides in part that
                     [i]f the defendant was on federal or state
          probation, parole, or supervised release
          at the time of the instant offense, and
          has had such probation, parole, or
          supervised release revoked, the sentence
          for the instant offense should be imposed
          to run consecutive to the term imposed for
          the violation of probation, parole, or
          supervised release in order to provide an
          incremental penalty for the violation of
          probation, parole, or supervised release.  
          See  7B1.3 (Revocation of Probation or
          Supervised Release) (setting forth a
          policy that any imprisonment penalty
          imposed for violating probation or
          supervised release should be consecutive
          to any sentence of imprisonment being
          served or subsequently imposed).

        Here, Perry was on state probation for a previous Rhode
Island offense at the time of his federal offense.  At the time of
his sentencing before the district court, his probation had been
revoked by the Rhode Island authorities.  Examining the application
note, the district court found it to be applicable, and sentenced
Perry to 77 months imprisonment to be served consecutive to his
state sentence for violation of his probation.
        The Supreme Court has stated that commentary to the
Sentencing Guidelines must be given "controlling weight unless it
is plainly erroneous or inconsistent with the regulation."  Stinson
v. United States, 508 U.S. 36, 45 (1993) (quotation marks and
citations omitted).  Nothing in the application note quoted above,
see U.S.S.G.  5G1.3 (Commentary, note 6), is contrary to the
Sentencing Guidelines.  The district court correctly followed the
application note, and Perry was properly sentenced to a federal
sentence to be served consecutive to his state term of
imprisonment.
        Affirmed.

</body>

</html>