**UNITED STATES of America, Plaintiff**

**v.**

**Leroy PERSON, Defendant**

**No. 03–CR–30029–MAP.**

United States District Court, D. Massachusetts.

April 27, 2005.

Mark J. Albano, Dalsey, Ferrara & Albano, Terrence M. Dunphy, Fallon, Sullivan, Dunphy & Mulvaney, Lori H. Levinson, Cain, Hibbard, Myers & Cook, Pittsfield, MA, for Leroy Person (1), Defendant.

Todd E. Newhouse, United States Attorney's Office, Springfield, MA, for USA Plaintiff.

### SUPPLEMENTAL STATEMENT OF REASONS

PONSOR, District Judge.

On April 13, 2005, the court sentenced the defendant to 84 months in the custody of the Bureau of Prisons with six years of supervised release. The court's reasons for imposing this sentence were set forth in detail orally at the sentencing hearing. This memorandum will briefly summarize them.

Preliminarily, it is important to note that the jury never convicted this defendant of having committed any crime involving the distribution of cocaine base in the form of so-called "crack" cocaine. Nor does the record of the trial permit this court to make such a finding (assuming it would be permitted to do so).

A 1993 amendment to the Sentencing Guidelines makes this omission crucial. For the past twelve years, at least for purposes of the Guidelines, forms of cocaine base other than crack have been treated as ordinary cocaine, *i.e.* without the enhanced penalties associated with crack. *See* U.S.S.G.App. C, Amend. 487 (1993).

The government has argued that, while the absence of any conviction involving the crack form of cocaine base might be significant for purposes of the Sentencing Guidelines, this deficiency should not affect application of the statutory minimum mandatory sentence pursuant to 21 U.S.C. § 841(b)(1)(B)(iii), which calls for a mandatory five-year sentence (enhanced in this case to a mandatory ten-year sentence due to the defendant's prior conviction for felony drug offenses) for a crime involving five grams or more of "cocaine base."

For the reasons set forth in the Supplemental Statement of Reasons issued on March 14, 2005 in the case of *United States of America v. Gregory Thomas*, 03–CR–30033–MAP, this court is of the opinion that the First Circuit, if squarely presented with the issue, will agree with the solid majority of circuits that have concluded that the narrower definition of "cocaine base" applicable since 1993 to the Sentencing Guidelines applies equally to the statutes governing minimum mandatory sentences. It is unreasonable to suggest that Congress, in situations where the consequences are so grave, could have intended one definition of cocaine base to apply for Sentencing Guidelines purposes and another to apply to sentences governed by statute. Moreover, it can hardly be denied that the severely enhanced penalties set forth in the statute for "cocaine base" were enacted as a response to a plague of *crack* distribution; they were not intended to address other, less harmful forms of cocaine base.

In reaching this conclusion, the court acknowledges that the Court of Appeals in *United States v. Richardson*, 225 F.3d 46 (1st Cir.2000), appears, without extended discussion, to hold to the contrary. That decision, however, relies on an earlier First Circuit decision, *United States v. Lopez–Gil*, 965 F.2d 1124, 1134 (1st Cir.1992), which predates the 1993 amendment to the Guidelines, and does not cite or address the numerous cases in other circuits holding to the contrary after 1993.

Where the consequences are so profound—here, a excessive sentence of life in prison—the First Circuit, in my opinion, will wish to revisit this issue, adequately

briefed and in the center of its radar screen. A copy of this court's *Thomas* Statement is appended to this memorandum as Exhibit A.

Following its decision that no statutory minimum mandatory sentence applied, this court went on to the issue of defendant's career offender status, concluding, with some hesitation, that the now-advisory Sentencing Guidelines do place the defendant in that category.

The court's hesitancy derived from the uncertain impact of the Supreme Court's recent decision in *Shepard v. United States,* — U.S. —, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), upon the determination of what constitutes an appropriate prerequisite crime justifying the career offender status. In this case, the defendant clearly has one prior drug offense. It is not entirely clear, however, that either of his other convictions (for assault and battery by means of a dangerous weapon and for resisting arrest) would qualify necessarily as the second prerequisite conviction. Both crimes appear to be generic offenses allowing constructions, under certain circumstances, that would not qualify them always and necessarily as "crimes of violence" as defined by U.S.S.G. § 4B1.2.

■ At hearing, the court ultimately concluded that the more powerful argument was that, at least, the resisting arrest conviction constituted an adequate second prerequisite "crime of violence," placing the defendant in a career offender status and generating a Sentencing Guidelines range of 262–327 months.

■ The court nevertheless made the determination that, even under a mandatory Sentencing Guidelines regime, it would depart downward to a sentence of 84 months, based upon the conclusion that the career offender status would grossly overstate the seriousness of the defendant's criminal history. Defendant possesses only one scorable prior conviction for drug distribution, which netted him a sentence of approximately twelve months' incarceration. The other prerequisite offense, resisting arrest, grew out of a relatively minor fracas and resulted in a sentence of probation. While the defendant clearly does have other convictions, they simply do not justify, in any realistic sense, the imposition of the full sentence called for under the advisory career offender guidelines.

To the extent that the court's decision to depart downward is incorrect either in substance or in scope, the court would conclude that the same sentence was reasonable in light of the criteria set forth in 18 U.S.C. § 3553. In determining a reasonable sentence, the court would take into consideration the overstatement of the defendant's criminal history, and the fact that he suffered a severe psychological injury as a young child when he realized the people who were raising him were not (as he had been told) his true parents. Beyond this, the court would take into consideration that the sale itself was extremely small and that the defendant has a very high capacity for rehabilitation. He possesses both marketable skills as a meat cutter and electrician, and a supportive family.

The sentence adequately addresses the nature and circumstances of the offense itself, which involved one sale of approximately $250 of cocaine base. It also addresses the background and history of the defendant. The court in particular considered the importance of deterrence in the sentence that it chose. The seven-year sentence will be more than adequate to deter others who may be tempted to commit this same crime. Finally, the court considered the prospects for rehabilitation for the defendant and found that they would be enhanced with the particular sen-

tence imposed, especially the long term of supervised release.

As noted, the court's reasons for the sentence are set forth in more detail in the transcript of the court's oral remarks at the sentencing hearing. This memorandum is only intended to provide a summary of the court's reasoning.

EXHIBIT A

United States of America, Plaintiff

v.

Gregory Thomas, Defendant

No. 03–CR–30033–MAP.

United States District Court,

D. Massachusetts.

March 14, 2005.

SUPPLEMENTAL STATEMENT
OF REASONS

PONSOR, District Judge.

On May 21, 2004, the defendant was found guilty after a jury trial of two counts of possession with intent to distribute, and distribution of, cocaine base. The charges arose from sales of cocaine base on January 16, 2003 for $100 and on January 23, 2003 for $350.

On February 25, 2004, the court sentenced the defendant to 262 months to the custody of the Bureau of Prisons, with six years of supervised release to follow.[1] The purpose of this memorandum is to detail the justification for the court's conclusion that this sentence is reasonable, based upon the factors set forth in 18 U.S.C. § 3553(a) and the now-advisory Sentencing Guidelines.

As the first step in crafting the sentence, the court looked to the Guidelines, which required a preliminary assessment of the evidence bearing on the identity of the controlled substance at issue. Under the Sentencing Guidelines, the penalties for crimes relating to a specific sub-type of cocaine, so-called "crack" cocaine, are one hundred times greater than the penalties for crimes relating to other forms of cocaine.

Some confusion existed prior to 1993 as to the Guidelines' intent with regard to a larger sub-category of cocaine, known as cocaine base, of which crack cocaine is one variety. However, since November 1, 1993, it has been clear that, where the Guidelines refer to cocaine base for purposes of the enhanced penalty, they are referring only to the sub-type of cocaine base known as crack. Pursuant to the 1993 amendment "forms of cocaine base other than crack … will be treated as cocaine"—i.e., without the enhanced penalties. See U.S.S.G.App. C., Amend. 487 (1993).

In this case, both the government and the court exhibited a lack of precision with regard to the crucial distinction between cocaine base generally and the particular sub-form of cocaine base, crack cocaine, to which enhanced penalties apply. Thus, for example, the indictment referred only to "cocaine base," failing to specify in the charging document that the government was seeking a conviction for a specific type of cocaine base, crack. At trial, the government's chemist confirmed no more than that the substance in question was cocaine base.[2] The only evidence that attempted

---

1. Sentencing was postponed several times to allow counsel to brief the issues raised, first, by the Supreme Court's *Blakely* decision and, later, by its decision in *Booker*.

2. Indeed, chemical differentiation between cocaine base generally and the crack form of cocaine base is impossible, since "crack and all other forms of cocaine base are identical at the molecular level." *United States v. Robinson,* 144 F.3d 104, 109 (1st Cir.1998).

to locate the substance at issue within the narrower category of *crack* cocaine was the testimony of one FBI investigator, who stated that in his opinion the substance in question was crack cocaine.

The court, as noted, contributed to the imprecision. Its poorly worded verdict form directed the jury to consider whether the government had proved the defendant guilty beyond a reasonable doubt "of possession with intent to distribute and distribution of cocaine base, sometimes known as 'crack cocaine' ...." This ambiguous wording permitted the jury to find the defendant guilty of distribution of cocaine base but did not require it necessarily to address the more specific question of whether the substance actually distributed by the defendant on the two occasions charged by the government was, in fact, cocaine base in the form of crack. For all that can be known for certain from the special verdict form, the jury might have simply intended to find the defendant guilty of crimes involving cocaine base.

The government points to two Court of Appeals decisions, *United States v. Richardson*, 225 F.3d 46 (1st Cir.2000) and *United States v. Robinson*, 144 F.3d 104 (1st Cir.1998), as approving the district court's reliance on an expert chemist's finding of cocaine base, supplemented by an experienced law enforcement officer's identification of the substance as crack, as sufficient to buttress the judge's conclusion that the substance in question was actually crack. The government's point is correct, to some extent, but ignores some differences between the facts of those cases and the record now before this court. More importantly, the government's argument overlooks the procedural context in which the First Circuit's opinions arose.

In *Robinson*, the court at sentencing had before it not only the chemist's and the investigator's testimony, but the defendant's own admission that the substance found in his pocket was "rock," a common street term for crack. *See, Robinson*, 144 F.3d at 109. In *Richardson*, the chemist noted the presence of sodium bicarbonate in some of the samples, an admixture which the Guidelines themselves specifically identify as one signature for crack. In addition, three different law enforcement agents offered their opinions that the substance was crack. *See, Richardson*, 225 F.3d at 49–50.

In this case, the government's chemist did not note the presence of sodium bicarbonate, no admission was made by the defendant that identified the substance as crack, and only one law enforcement officer testified that, in his opinion, the substance in question constituted the crack form of cocaine base. Certainly on this basis it would be impossible to conclude that the jury here *must* have found that the substance the defendant distributed was crack. Neither *Richardson* nor *Robinson* suggest any such inevitable conclusion, even with the greater evidence present in those two cases.

More significantly, the limited issue presented to the Court of Appeals in *Richardson* and *Robinson* was whether it was "clear error" for the sentencing judge to rely on the quantum of evidence available at the sentencing in making the decision that the guidelines for crack applied. While the First Circuit found in those two instances that the evidence was enough to insulate the judge's sentence from any claim of clear error, nothing in either decision suggested that the quantum of evidence would have *required* the judge to find the substances were crack, or that it would in any way have constituted error for the judge to have made a contrary finding.

The record in this case is not sufficiently clear for the court to conclude that the

jury found beyond a reasonable doubt that this defendant was guilty of possessing with intent to distribute and distributing *crack* cocaine versus generic cocaine base. It flows from this that, to the extent that a *jury finding* beyond a reasonable doubt is required in order to measure the application of the advisory Guidelines, then the necessary finding simply has not been made.

To the extent that it now falls within the court's discretion to make its own decision with regard to whether the substance in question constituted crack cocaine, this court finds that the record lacks sufficient evidence to permit such a finding. To repeat, in the right circumstances, testimony of a chemist identifying the substance as cocaine base plus testimony of an agent giving his opinion that the substance constitutes the sub-species of cocaine base known as crack, may *permit* the finding the government seeks; it does not *mandate* it. Where the impact of a finding that crack cocaine is involved has such an extraordinarily powerful effect on the potential sentence, this court may be justified in requiring more. Additional forms of proof may include: presence of sodium bicarbonate or some other common chemical component signifying crack; conversations before, during or after the sale signifying that the defendant knew that what he was selling was crack; or testimony from more than one witness regarding the unique appearance of the substance in question indicating it was crack.

As this case now stands, whether the court must rely upon the jury's finding, or may make the factual finding itself, the evidence was insufficient to justify a conclusion that crack cocaine was involved in this case. Thus, in crafting the sentence, the court will use the Sentencing Guidelines governing forms of cocaine that are not crack.

As it happens, the impact of this finding upon the sentence is not as powerful in this case as it sometimes is. The reason for this is that the defendant, due to his extensive criminal history, qualifies as a so-called "career offender." Under the career offender provisions of the Sentencing Guidelines, calculation of the potential penalty for possession with intent to distribute more than five grams of non-crack cocaine (in view of the fact that the defendant has at least one prior felony drug conviction), begins at an offense level 34 and Criminal History Category VI, generating a Sentencing Guidelines range of 262 to 327 months. Assuming the amount of the substance in question had been proven beyond a reasonable doubt to be crack cocaine, the Sentencing Guidelines range would have been 360 months to life.[3]

A final issue needs to be addressed, which is the impact of the statutory minimum mandatory sentence here under 21 U.S.C. § 841(b)(1)(B)(iii). This statute prescribes a minimum mandatory sentence of five years and a maximum sentence of forty years for crimes involving five grams or more of "cocaine base." The statute makes no reference to the "crack" subtype, but appears to apply to *any* form of cocaine base. When a defendant, such as the defendant here, has at least one prior

---

**3.** The problem of the identification of the drug in question that is bedeviling this case may be fairly easily avoided in the future. The government has the power to identify in the indictment the substance in question specifically as the crack form of cocaine base. The court, for its part, will in future craft its special verdict form in such a way as to require the jury explicitly to make the finding, in order to return a conviction, that the substance in question has been proved beyond a reasonable doubt to be crack cocaine, without ambiguity.

conviction for a felony drug offense, the minimum mandatory sentence doubles to ten years and the maximum increases to life. Assuming this statute controlled the sentence, and applied to all forms of cocaine base, the potential life sentence, combined with the defendant's career offender status, would generate a Guidelines sentencing range of 360 months to life.

The question of whether the federal sentencing scheme harbors two definitions of cocaine base—one in the Guidelines limited to crack cocaine, and the other in the statute extending to all forms of cocaine base—has split the courts of appeals. The Fourth, Seventh, Eighth and Eleventh Circuits have held that the reference to "cocaine base" in § 841 should be construed the same as it is in the Guidelines, *i.e.,* covering *only* the crack form of cocaine base. The Second and Third Circuits have found that the definition of cocaine base is broader in the statute than in the Guidelines. *Compare United States v. Booker,* 70 F.3d 488, 494 (7th Cir.1995); *United States v. Jackson,* 64 F.3d 1213, 1219 (8th Cir.1995); *United States v. Fisher,* 58 F.3d 96, 99 (4th Cir.1995), and *United States v. Munoz–Realpe,* 21 F.3d 375, 377–78 (11th Cir.1994) *with United States v. Barbosa,* 271 F.3d 438, 467 (3d Cir.2001), and *United States v. Jackson,* 59 F.3d 1421, 1422–24 (2d Cir.1995).

The First Circuit in *United States v. Lopez–Gil,* 965 F.2d 1124, 1134 (1st Cir. 1992), held prior to the 1993 amendment to the Guidelines that the reference to cocaine base in the statute extended to all forms of cocaine base. Five years ago, citing *Lopez–Gil* but without discussion of the circuit conflict subsequent to 1993, the First Circuit appeared again to endorse a construction of § 841 that would extend to all forms of cocaine base, not simply crack. *See United States v. Richardson,* 225 F.3d 46, 49–50 (1st Cir.2000).

The absence in *Richardson* of any discussion of the evolution of the case law after the 1993 amendment to the Sentencing Guidelines strongly suggests that the question of the proper construction of § 841 was not squarely before the First Circuit in *Richardson* and therefore was not considered. In my opinion, if directly confronted with the issue, the First Circuit would agree with the Eleventh Circuit that there is no reason "to assume that Congress meant for 'cocaine base' to have more than one definition" and that its construction of the term in the Guidelines was intended to limit the reach of the statute as well. *See, Munoz–Realpe* at 21 F.3d 378.

Assuming that my assessment of the First Circuit's likely construction of § 841 is incorrect—and I recognize that my position is debatable—and accepting that therefore the advisory Guidelines would call for a sentence in the range of 360 months to life, it is still my opinion that in this particular case, taking the Guidelines into consideration and applying the factors set forth in 18 U.S.C. § 3553(a), a sentence of 262 months is reasonable, for the following reasons.

Looking at the nature and circumstances of the specific offenses—two relatively small hand-to-hand sales—no one could reasonably describe a sentence of nearly twenty-two years in prison as anything but severe. The heavy penalty imposed here is justified mainly by the history and characteristics of the defendant, which demonstrate a marked propensity for repeated, serious criminal behavior. The picture also includes, however, an individual who was abandoned by his father, whose mother died when he was still a child, and who had no siblings or family other than an aunt. His current family has exhibited a strong attachment to him and has demonstrated this through letters

submitted on his behalf, and the defendant himself showed an extraordinary degree of contrition at sentencing.

While a very long sentence is appropriate, an essentially life-extinguishing sentence in these circumstances is not reasonable. Defendant, at the time of his release in his late fifties or early sixties, will offer no danger to the community and may have a chance to enjoy his remaining years with his loved ones. The lengthy period of supervised release will also serve to insure that the defendant will offer no risk of any return to criminal conduct.

The sentence promotes respect for the law, it provides more than adequate deterrence, and it insures that the public will be protected from further crimes by this defendant. It will also allow the defendant to take the opportunity to participate in training programs while incarcerated and to address his severe marijuana addiction. In sum, in light of all these factors, the sentence of 262 months with a supervised released term of six years is reasonable.[4]

---

**4.** This court's decision that the career offender portions of the Guidelines apply does not appear to collide with the Supreme Court's decision in *Shepard v. United States,* 544 U.S. —— (2005), handed down ten days after this defendant's sentencing. Mr. Thomas's record included five prior offenses (four felony drug convictions and one attempted robbery felony conviction) that constituted, without any ambiguity or necessity for judicial fact finding, predicate convictions to support the career offender designation. Only two are required. Of course, the court's decision to take guidance from the career offender provisions of the Sentencing Guidelines has been predicated on the continued viability of the Supreme Court's opinion in *Almendarez–Torres v. Unit-* ed States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). If this decision is overturned, as Justice Thomas predicted in *Shepard* it would be, then this court's decision to look to the career offender portions of the Guidelines for guidance in crafting the sentence may have been improper. If reference to the career offender guidelines by this court is found on appeal to be improper, then resentencing would be required. This court would probably not have imposed a sentence of two hundred and sixty-two months on the defendant, except for the advisory impact of the Sentencing Guidelines as they have been calculated by the court, including the career offender provisions.