17 F.Supp.2d 33 (1998)
UNITED STATES of America
v.
Ramon PENA, Defendant.
No. CRIM. A. 98-30009-MAP.
United States District Court, D. Massachusetts.
July 7, 1998.
*34 Michael N. Kallock, West Springfield, MA, for Defendant.
Kevin O'Regan, United States Attorney's Office, Springfield, MA, for U.S.
MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT RAMON PEÑA'S MOTION TO DISCLOSE IDENTIFICATION OF INFORMANT (Docket No. 29)
NEIMAN, United States Magistrate Judge.
Defendant Ramon Peña's motion seeks to have the Government reveal the identity and whereabouts of a confidential informant who Defendant knew as "Julia." Defendant asserts that Julia's true identity and address must be disclosed because her testimony may be relevant and helpful to a possible defense of entrapment. See Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).
The Government opposes the motion. Explaining that it does not intend to call Julia as a witness at trial, the Government asserts that Defendant has not met his burden under Roviaro, that there is no compelling need to disclose her identity and that disclosure of the information would place Julia in danger. See United States v. Lewis, 40 F.3d 1325, 1335 (1st Cir.1994) ("[Mere] speculation ... is not sufficient to meet the heavy burden which rests on an accused to establish that the identity of a confidential informant is necessary to his defense.") (quotations and internal citations omitted.) Nonetheless, at oral argument the Government offered to produce a "sanitized" version of impeachment evidence with respect to Julia without disclosing her identity.
Under Roviaro, there is no fixed rule with respect to disclosure of the identity of a confidential informant although four considerations are relevant: (1) the crime charged; (2) the possible defenses; (3) the possible significance of the informant's testimony; and (4) other relevant factors. Roviaro, 353 U.S. at 62, 77 S.Ct. 623. See also United States v. Robinson, 144 F.3d 104 (1st Cir. *35 1998). Here, Defendant is charged with five counts of distributing and possessing with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 841. The five counts relate to five separate dates between October 10, 1997, and January 27, 1998, at which time Defendant was arrested by members of the Western Massachusetts Narcotics Task Force. Most of the transactions were either audiotaped or videotaped.
Defendant concedes that the tapes appear to show him acting alone. However, the Government has also made available to Defendant tapes of a drug transaction on October 6, 1997. Those tapes show Defendant in an automobile together with Julia and an undercover agent of the Western Massachusetts Narcotics Task Force, later identified as John Jusino. A copy of the transcribed conversation has been made available to the court. Defendant notes, and the Government concedes, that although a drug transaction appears to have taken place at that time, neither Defendant nor Julia has been charged with any crime for that date. It may well be that the Government's choice not to charge Defendant with a crime for the October 6, 1997 transaction is meant, at least in part, to protect Julia's confidentiality.
Defendant argues that the October 6, 1997 tape supports a defense of entrapment with respect to the subsequent crimes with which he is charged. An entrapment defense can be successful if Defendant produces evidence that the Government improperly induced him to commit a crime which he was not predisposed to commit. See United States v. Joost, 92 F.3d 7, 12 (1st Cir.1996). As the First Circuit explains:
There are two elements to the entrapment defense: improper government inducement to commit the offense and a lack of predisposition on the part of defendant to commit such an offense. In order to be entitled to an entrapment instruction, the Defendant has the burden of producing "some evidence" "on both elements sufficient to raise a reasonable doubt as to whether he was an `unwary innocent' rather than a `unwary criminal.'"
Id. (citations omitted).
In its original opposition to Defendant's motion, the Government argued that Defendant failed to explain even generally how he was improperly induced to sell crack cocaine and heroin to the undercover officer. Defendant also failed to explain how, as a twice convicted drug dealer who had recently been released from prison on drug charges, he was not predisposed to sell illegal drugs. (See Docket No. 31.) In addition, the Government argued, Defendant had not explained how Julia's identity would help him establish improper inducement or lack of disposition. (Id.) However, after considering Defendant's responsive affidavit, produced at the request of the court, together with the draft transcripts originally provided by Defendant, the court believes that Defendant has adequately answered the Government's arguments.
The transcript of the October 6, 1997 interaction, in which Julia, Defendant and Jusino all played a part, could support a claim of entrapment. It appears that Defendant was providing drugs to Jusino at Julia's request:
[Jusino]: Hey, man! What is it, aren't
 you coming again? What's
 up?
[Defendant]: How are you.
[Defendant]: And how are you.
[Julia]: (UI)
[Jusino]: (UI) and you know. (UI)
[Defendant]: Yeah, no, she told me to
 bring you some of this.
(Def. Mot. (Docket No. 29) Exh. A. (emphasis added).) In addition, Defendant points out that in a later taped telephone conversation on November 10, 1997, both Defendant and Jusino refer to Julia in a manner suggesting her role as a conduit. Defendant also suggests that a fair reading of another transcribed conversation between Defendant and Jusino on January 5, 1998, demonstrates that Jusino knew Julia for a while, that Julia had introduced Jusino to Defendant and that Julia had close ties to Jusino and other law enforcement personnel.
Of course, the court is aware that these later conversations may well reflect the role being played by Jusino in his undercover capacity. Nonetheless, Defendant's sworn affidavit provides independent evidence of *36 possible entrapment. In his affidavit Defendant claims to have met Julia in approximately July of 1997, after he was released from the Hampden County House of Correction where he had served a two year sentence on drug-related charges. (See Def. Supp. Mem. (Docket No. 36) Peña Aff. ¶ 3.) Defendant avows that he came to know Julia at her initiation, that he respected her and that "she conveyed a feeling of trust to me." (Id. at ¶¶ 6-10.) He goes on to aver that after two or three conversations Julia mentioned "that she wanted to find someone to buy drugs from. She indicated that she knew someone to whom she could sell drugs to." According to Defendant, Julia stated "that she had previously sold drugs to someone in Maine." (Id.¶ 13.) Defendant also states that Julia asked him "if I knew anybody from whom I could purchase drugs; that she had somebody in Puerto Rico with which to buy the drugs." (Id.¶ 15.)
Defendant claims to have told Julia "that I was not interested in becoming involved with drugs again," having been recently released from jail on drug related charges. (Id.¶ 16.) However, Defendant asserts, Julia "insisted that it was a way in which we could both obtain some money." (Id.) This was important to Defendant because his own situation "was dismal and cause for despair. My children, who reside in the Dominican Republic were without money to attend school or to buy books or materials as well as living expenses. I had been in jail for two years, was earning very little money to assist my family and job prospects were dim. Additionally, my green card had not been returned to me and this was a further hindrance at gainful employment." (Id.¶ 11.)
Defendant also claims that he told Julia that he "knew someone who dealt in drugs" but "did not want to get involved with it." (Id.¶ 17.) Subsequently, Defendant asserts, Julia told him "that I would not have to become involved with the drugs; just to find the person from whom she could purchase the drugs." (Id.¶ 18.) He also says that he told Julia "that any source that I knew dealt in drugs would not want to deal with her because she was unfamiliar with those individuals." (Id.¶ 19.) Julia "then said that since I knew the source, I could get the drugs and then sell to her." (Id.) Finally, Defendant asserts that "it was only after repeated requests from [Julia] that I agreed to help her obtain some drugs to sell to the friends she had sold to before." (Id.¶ 21.) "My source `fronted' the drugs to me," Defendant states, "and I helped `Julia' sell the drugs to the person I later learned was an undercover police officer." (Id.)
Even though Julia may not have been a witness to the crimes with which Defendant has been charged, she was clearly a percipient witness to the first uncharged transaction on October 6, 1997, a transaction into which Defendant claims to have been entrapped. The Government's choice not to indict him for a crime on that date does not mean that the entrapment defense could not then arise and be available for the subsequent crimes actually charged. As described, the October 6, 1997 tape indicates that Defendant told Jusino that "[Julia] told me to bring you some of this," "this" being the cocaine. While there may well be evidence which would undermine Defendant's claim of entrapment, as the Government argues, the court believes that Julia herself may be fundamental to the preparation of Defendant's defense. She not only participated in the initial transaction, but appears to have solicited the very drugs which were exchanged.
The disclosure of a confidential informant's identity is a matter entrusted to the sound discretion of the court based on the particular circumstances of each case. See United States v. Batista-Polanco, 927 F.2d 14, 19 (1st Cir.1991); United States v. Estrella, 567 F.2d 1151, 1153 (1st Cir.1977); United States v. Jackson, 918 F.2d 236, 240 (1st Cir.1990). In fact, "the government's privilege to withhold the names of informers must give way if `the government's informer was the sole participant, other than the accused, in the transaction charged ... [and] was the only witness in a position to amplify or contradict the testimony of government witnesses.'" United States v. Bibbey, 735 F.2d 619, 621 (1st Cir.1984) (quoting Roviaro, 353 U.S. at 64, 77 S.Ct. 623). See also Lewis, 40 F.3d at 1335. Otherwise, the First *37 Circuit has indicated, "disclosure is mandated only when the defendant is able to point to concrete circumstances sufficient to overcome the public interest in encouraging the flow of confidential information and the safety of confidential informants." Batista-Polanco, 927 F.2d at 19.
In the case at bar, Defendant's need for the information is strong since Julia was directly involved in activities which led to the crimes with which he is charged. As an initial participant, Julia was more than a mere tipster or conduit. See Batista-Polanco, 927 F.2d at 19-20; United States v. Martinez, 922 F.2d 914, 920-21 (1st Cir.1991). See also United States v. Barnes, 486 F.2d 776, 778-79 (8th Cir.1973) ("[W]here the witness is an active participant ... disclosure will almost always be material to the accused's defense."); Gilmore v. United States, 256 F.2d 565 (5th Cir.1958) (same). Julia was also mentioned in subsequent conversations between Defendant and Jusino. Thus, Defendant's assertions are not mere "speculation." Compare Batista-Polanco, 927 F.2d at 19 (citations omitted). As a material witness, Julia is the "only person who is in a position to amplify or contradict crucial testimony of government witnesses." Robinson, 144 F.3d at 106. However, Defendant does not know Julia's true identity and he can barely assist his lawyer in this regard, having been detained by the court pending trial.
Defendant's need for disclosure by the Government having been demonstrated, that need must be balanced against the personal safety of the witness. Roviaro, 353 U.S. at 62, 77 S.Ct. 623. In this regard, the Government claims that disclosure of Julia's identity would threaten her personal safety. In support, the Government has provided the affidavit of Richard Soto, a police officer with the Springfield Police Department assigned to the Western Massachusetts Narcotics Task Force. Soto states that Julia is still working with him in a confidential capacity on three other narcotics investigations. Disclosing Julia's true name and address to Defendant, Soto states, "will jeopardize the success of the [sic] these investigations because disclosure will make it more likely that the targets of these investigations will learn that [Julia] is working with the government." (See (Docket No. 35) Soto Aff. ¶ 4.) In addition, Soto asserts that disclosure of Julia's name and address might place her in physical danger because of her cooperation. His experience as a law enforcement officer, Soto asserts, makes him believe that if such information were disclosed, "the danger of violence" to Julia by Defendant's "bosses" and associates or other drug dealers would be increased. (Id.)
Respecting the possible dangers, the court still believes that the Government must disclose further information about Julia. In the court's view, the Government's concern about Julia's safety is more speculative than real. Having been more than a mere acquaintance of Julia's, Defendant already knows where Julia lives or, at least, lived. If Defendant were truly intent on creating a danger to Julia, he would have been able to do so with other resources at hand.
At bottom, the court believes that it is necessary for Defendant to explore the full range of his available defenses to preserve his fundamental right to a fair trial. Robinson, 144 F.3d at 106. To do so, Defendant will need to have access to information about Julia. The court also believes that the Government is able to produce this information to Defendant's counsel in a manner that would reasonably insure Julia's safety. For example, rather than giving the specific information to Defendant himself, the Government could provide the information to Defendant's counsel only or arrange for Julia to be interviewed by Defendant's counsel in a neutral setting. Of course, a witness cannot be compelled to submit to a pre-trial interview in a criminal case. United States v. Tejeda, 974 F.2d 210, 217 (citing United States v. Arboleda, 929 F.2d 858, 868 (1st Cir.1991) quoting Kines v. Butterworth, 669 F.2d 6. 9 (1st Cir.1981) ("[n]o right of a defendant is violated when a potential witness freely chooses not to talk ...")). Nonetheless, at least the opportunity should be afforded Defendant.
Accordingly, Defendant's motion is ALLOWED.