UNITED STATES of America,

v.

Richard PESATURO.

Crim. No. 06–10390–MLW.

United States District Court, D. Massachusetts.

Oct. 9, 2007.

William J. Cintolo, Cosgrove, Eisenberg & Kiley, PC, Boston, MA, for Richard Pesaturo.

David G. Tobin, United States Attorneys Office, Boston, MA, for United States of America.

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO COMPEL AND FOR DISCOVERY

LEO T. SOROKIN, United States Magistrate Judge.

The Defendant's Motion to Compel (Docket # 20) is ALLOWED IN PART AND DENIED IN PART. The Court will hold a Final Status Conference in this case on October 26, 2007, at 3:00 p.m. in Courtroom # 14.

### PROCEDURAL HISTORY

On May 10, 2007, Defendant Richard Pesaturo filed a Sealed Motion to Compel and for Discovery, seeking to discover for the purpose of preparing his defense the identity of an informant, and certain taped conversations and other materials in the possession of the Government relating to that informant. Docket # 20. The Government filed its opposition on June 11, 2007, asserting that it should not be compelled to identify a non-testifying informant and that the materials sought by the Defendant are protected by a qualified privilege protecting information that would

disclose the identity of an informant. Docket # 23. Following a hearing on June 26, 2007, the Court took the matter under advisement. Defense counsel filed a post-argument letter supporting the motion with further citations to relevant caselaw. Docket # 28. On July 3, 2007, the Court issued an electronic order permitting both parties to file a supplemental memorandum addressing the question of whether Fed.R.Crim.P. 16(a)(1)(B)(I) governs discovery of the taped conversations sought by the Defendant. *See* Electronic Order of July 3, 2007. The Government filed a supplemental memorandum responding to the Defendant's post-argument letter, but it did not address the Rule 16 issue. Docket # 25. The Defendant filed a supplemental memorandum addressing the Rule 16 issue on July 18, 2007. Docket # 27. The Court held a further hearing on the Motion on September 12, 2007.

*FACTUAL BACKGROUND*

On November 30, 2006, a grand jury returned a five-count indictment alleging one count of Conspiracy to Possess with Intent to Distribute Oxycodone, and Conspiracy to Distribute Oxycodone (in violation of 18 U.S.C. § 846), and four counts of Distribution of Oxycodone (in violation of 18 U.S.C. § 841(a)(1)). Docket # 9. The Indictment alleges a conspiracy beginning on an unknown date, "but at least by in or about June 2006 and continuing thereafter until in or about September 2006." *Id.*, at 1. The four substantive counts allege distribution offenses occurring on August 8, 2006, August 22, 2006, August 31, 2006 and September 25, 2006. *Id.*, at 9–17.

According to the criminal complaint, two agents of the Drug Enforcement Agency (DEA) debriefed a confidential informant during June, 2006. Docket # 1, at 4. The informant told the agents that in 1995 and 1996, the Defendant had employed him to deliver cocaine and that the Defendant was currently selling OxyContin from his business (the Pasta Pot restaurant). Docket # 1, at 4–5. The informant also stated that the Defendant had an unlimited supply of OxyContin and had recently asked the informant to provide him with customers for that OxyContin. *Id.*, at 5. The informant also told the agents that the Defendant had been selling OxyContin since 2004 and that he had purchased it from the Defendant on numerous occasions. *Id.*, at 5.

Based on the information provided by the informant, an undercover DEA agent (Coletti) telephoned the Defendant on July 25, 2006, for the purpose of arranging a meeting. *Id.* Coletti identified himself as a friend of the informant. *Id.*, at 6; Docket # 23, at 7. The Defendant asked Coletti about other associates of the informant, and as a result of that conversation agreed to meet with Coletti in person. Docket # 1, at 6.

Coletti met with Pesaturo for the first time on August 1, 2006, at the Pasta Pot. During this meeting, Coletti told the Defendant that he would like to buy between 100 and 200 tablets of OxyContin per week, to which the Defendant agreed. *Id.*, at 7. No OxyContin was purchased at this meeting. *Id.* Coletti purchased OxyContin in 100 tablet increments on August 8, 2006, August 22, 2006, August 31, 2006, and September 25, 2006. *See generally* Docket # 1. Both the phone calls and the meetings between Defendant and Coletti were recorded. Docket # 1, at 6. These recordings have been produced to the Defendant in discovery and are not among the materials sought via the pending motion.

Under seal, the Defendant filed the pending motion specifically identifying the person whom he believes to be the Government's informant and alleging in some detail (described below) specific conduct by the informant which he maintains supports

an entrapment defense. Docket # 20. The Defendant asks that the Government be ordered to disclose whether the informant is the person he identifies, and if so, that the Government be ordered to produce: the recordings of all conversations between the informant and the Defendant; the informant's cooperation agreement; all Form 302 Reports of Government debriefings of the informant relating to the Defendant; and, all other material pertaining to the informant's cooperation with the Government, on this or any other case. Docket # 20, at 7..

At the June 26, 2007, hearing of the Motion and after the Government's opposition had been filed, the Defendant supplemented his filings with an affidavit. In his affidavit, the Defendant states that the recordings of his in-person and telephone conversations with the undercover agent will reflect that the informant was referred to therein by his first name (a first name matching that of the person he has identified as the informant). Docket # 29, at ¶¶ 7–9.[1] Although the Court has not listened to the recordings, the transcripts submitted by the Government ex parte confirm this assertion. Docket # 24.

The Defendant also affirms that prior to his introduction to the agent, he "had no intention of selling any drugs to the Government agent or anyone else." Id., at ¶ 10. The Defendant states that he· has known the informant "for quite some time" and that he has a specified relationship with the informant. Id., at ¶ 11. He knew that the informant "was scheduled to begin serving a prison sentence and that he was in dire need of money to provide for" a specific reason while incarcerated. Id., at ¶ 12. The Defendant states that the informant proposed that he supply Oxycontin to the undercover agent, and that he believed the purpose to be providing support to the informant's family while he was in prison. Id., at ¶¶ 13–14. The Defendant "refused (initially) the advances, requests and pleading of [the informant] to provide drugs to the undercover agent." Id., at ¶ 15. He "explained to [the informant] that [he] was no longer in that business." Id., at ¶ 16. "[The informant] nevertheless, continued to call [him] and pleaded with [him] to supply Oxycodone to the undercover agent." Id., at ¶ 17. The Defendant affirms that he "remained adamant that [he] would not get involved." Id., at ¶ 18. He states that "[a]fter numerous calls and my continued refusal to do what [the informant] was asking me to do, [the informant] ratcheted up the pressure and then indicated to me that he was in fear of the undercover agent—who he described as a 'biker'—and that if he were not able to make arrangement to supply the undercover agent he and his family might be hurt." Id., at ¶ 19. The Defendant also states that the informant told him that he "owed him this 'favor.' " Id., at ¶ 20. The Defendant states that "[f]urther playing on [the Defendant's] emotions and trying to make [him] feel guilty, [the informant] asked how [the Defendant] would feel if [the Defendant's] godchild ([the informant's] daughter) got hurt because [the Defendant] didn't do what [the informant] was asking." Id., at ¶ 21. The Defendant states that "[t]hat circumstance did concern" him. Id.

The Defendant further affirms that the informant told him that his " 'associates' would appreciate" the Defendant's assisting him. Id., at ¶ 22. The Defendant affirms that he interpreted this statement as a threat that if the Defendant refused to

---

1. In his affidavit, the Defendant identifies the informant by his full name. For present purposes, I shall use the term "informant." This decision also omits the specifics of certain details regarding the informant so as not to identify the informant publicly.

help the informant, those same associates would be unhappy and would hurt him. *Id.,* at ¶¶ 23–24. The Defendant states that this threat caused him to believe that the informant was "getting desperate" and that the informant might cause him "physical harm." *Id.,* at ¶ 25. The informant "continually expressed" his " 'good relationship' " with his " 'associates' " whom the Defendant understood to be " 'connected guys' in Boston" and "dangerous people." *Id.,* at ¶¶ 26–27. The Defendant affirms that "[a]lthough I did not want to do what I was being asked to do by [the informant], all of the factors I mentioned above, plus, the fear that either me or my family might be hurt if I did not agree, made me accede to [the informant's] requests and communicate with the undercover agent." *Id.,* at ¶ 28.

According to the Defendant, the undercover agent was "big, gruff and played the part of a dangerous 'biker' very well" and he was intimidated. *Id.,* at ¶¶ 29, 31. The Defendant states that for this reason, he told the informant after the first sale that he "would not deal with the undercover agent again." *Id.,* at ¶ 32. "In words or substance, [the informant] made me understand that if I did not continue to deal with the undercover agent, I would probably be hurt by the undercover agent." *Id.,* at ¶ 33.

The Defendant concludes that absent the playing of his emotions and the fear of physical harm the informant created in him, he "would NOT have sold drugs to the undercover agent." *Id.,* at ¶ 35 (emphasis in original). He asserts that he "will raise an entrapment defense at trial." *Id.,* at ¶ 36.

The Government has in its possession recordings of phone calls between the Defendant and the informant. It has sub-

mitted, *ex parte,* partial transcripts[2] of telephone conversations which occurred between August 11, 2006, and October 26, 2006, while the informant was incarcerated in a correctional institution. Docket # 24. While the documents contain a transcription of those "portions" of the conversations the Government determined relevant to the Motion, the Government has also offered to make available to the Court the audiodisc containing the complete conversations. *Id.* The Government maintains that the transcripts rebut the Defendant's claim that the informant threatened him with harm if he refused to make the second sale (or subsequent sales) to the informant. *Id.* According to the Government, the earlier conversations between the informant and Pesaturo were not recorded. *Id.* The Defendant and the Government agree that the informant, the Defendant and the undercover agent were never physically present together nor on the telephone together.

### DISCUSSION

The Defendant asserts that disclosure of the informant's identity and of each category of document sought are necessary to support or explore the viability of the defense of entrapment. To support his anticipated entrapment defense, the Defendant seeks to learn whether the person he identifies is in fact the informant. If so, he seeks: the recordings of all conversations between the informant and Defendant; the informant's plea agreement; all Form 302 Reports of his debriefings with the Government relating to the Defendant; and, all other material pertaining to the informant's cooperation with the Government, on this or any other case.

1. *Nature of the Entrapment Defense*

▮ The entrapment defense arises out of the public policy that preventing

---

**2.** The Defendant objected to the filing of the transcripts *ex parte.*

crime should never include inducing innocent people who would otherwise be law-abiding into committing a crime. *United States v. Luisi*, 482 F.3d 43, 52 (1st Cir. 2007), *citing Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Once an entrapment defense has been properly raised, the Government has the burden of proving beyond a reasonable doubt that the Defendant has not been entrapped. *Id.*, at 50 (*citing United States v. Walter*, 434 F.3d 30, 37 (1st Cir. 2006)). The Government must prove that at least one of the following is true: either (1) "no government agent or person acting on behalf [of] or . . . under the auspices of the government persuaded or induced the defendant to commit the charged crimes; or (2) the defendant was ready and willing to commit the [charged] crime[s] without persuasion from the government." *Id.*, (*see United States v. Gamache*, 156 F.3d 1, 9 (1st Cir.1998) (internal quotation marks omitted)).

█ A defendant is only entitled to an entrapment instruction if there is some evidence on both prongs of the entrapment defense sufficient to raise reasonable doubt. *Id.*, at 52, 58. The evidence must be more than the fact that the Government created the opportunity for criminal activity. *See Jacobson v. United States*, 503 U.S. 540, 550, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992); *United States v. Joost*, 92 F.3d 7, 12 (1st Cir.1996). The Defendant's affidavit establishes a basis for the entrapment defense. If credited, it shows a lack of predisposition, a resistence to participation, and improper inducement (*i.e.*, a threat of physical harm) by a person acting on behalf of the Government (assuming that the person the Defendant identifies is in fact the confidential informant described in the Complaint).

█ The Government advances several objections to the basis for the proffered entrapment defense. First, the Government objects that the Defendant has failed to provide a sufficient basis for an assertion of the entrapment defense because his allegations of entrapment are uncorroborated. However, the Government cites no authority for the proposition that the under oath statement of the defendant is insufficient evidence to support a claim of entrapment. As with any claim, the statement of a defendant, if believed, may suffice to prove entrapment, at least where it is not intrinsically improbable or flatly contradicted by irrefutable evidence. *See United States v. Rodriguez*, 858 F.2d 809, 815 (1st Cir.1988) (". . . we recognize that Rodriguez's soliloquy was self-serving—but realistically, how better than through his own testimony can a defendant meet his entry-level burden?"). Here, the Defendant has supported the claim with a detailed sworn affidavit laying out the basis for the claim.

Second, the Government asserts that the transcripts of conversations between the Defendant and the informant which it submitted contradict the Defendant's claim that the informant issued a threat of harm after the first sale. I agree with the Government's reading of the transcripts. Although the transcripts are partial, in light of my rulings below, an in camera review of the entire audiodisc containing the recorded conversations is unnecessary. While the transcripts undermine the credibility and weight accorded to the affidavit, it does not change the finding that, for purposes of the pending discovery requests, the Defendant has established a basis for an entrapment defense. Nor is the contradiction so substantial or fundamental that it warrants disregarding the affidavit in its entirety. *See Rodriguez*, 858 F.2d at 815.

Third, the Government suggests an alternative to disclosure. It asserts that the

Defendant has not yet *testified* at trial in support of his entrapment defense and that even then the Defendant may call the presumed informant to the witness stand (as he knows the identity of the presumed informant). If the presumed informant denies working for the Government, the defense fails, unless the presumed informant has testified falsely, in which case the Assistant U.S. Attorney prosecuting the case would notify the court of the perjury at a sidebar conference. *United States' Second Memorandum in Opposition to the Defendant's Motion to Compel,* at 3–4 (Docket # 25). Put another way, because the Defendant knows the identity of the presumed informant, the Defendant, in this case, is never entitled to disclosure to support his entrapment defense. The cases the Government cites do not establish this approach. In *DiBlasio v. Keane,* 932 F.2d 1038 (2nd Cir.1991), the Second Circuit determined that the state trial court committed constitutional error in refusing to require disclosure of the informant's identity after the defendant's evidentiary showing at trial in support of his entrapment defense. *United States v. White,* 324 F.2d 814 (2nd Cir.1963) considered whether an informant's testimony was potentially significant enough to justify a continuance in the trial, while *United States v. Gonzales,* 606 F.2d 70 (5th Cir. 1979), affirmed the denial of disclosure where the defendant failed to support his request with any evidentiary showing. In addition, the Government's approach also fails to account for factors supporting disclosure under *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), or *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (which, as explained below, requires disclosure in this case of the informant's identity), or under the application of Rule 16 and the Local Rules, all of which contemplate pretrial disclosure of certain categories of evidence or information.

2. *The Defendant's Request Concerning the Identity of the Informant*

As a threshold matter, the Defendant seeks an order compelling the Government to reveal whether or not the individual named in his affidavit is in fact the informant. The Government argues that the informant is not expected to testify, and that a qualified privilege protects from disclosure materials which would identify a non-testifying informant. Docket # 23, at 3–4 (*citing Roviaro,* 353 U.S. at 59, 77 S.Ct. 623). The Government also argues that the balancing tests weighing the Defendant's need for the contested materials on the one hand and the Government's need to protect the identity of informants on the other, weighs against disclosure of the materials. *Id.* at 9–10.

A. *The Roviaro Framework*

■ The Government enjoys a privilege authorizing it to withhold the identity of confidential informants who give law enforcement officers information relating to violations of the law. *Roviaro,* 353 U.S. at 59, 77 S.Ct. 623. The Defendant, "as the party seeking disclosure, [bears] the burden of persuasion." *United States v. Tzannos,* 460 F.3d 128, 139 (1st Cir.2006). "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.,* at 139, *quoting Roviaro,* 353 U.S. at 60–61, 77 S.Ct. 623. Whether an informant should be revealed is determined by balancing "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro,* 353 U.S. at 62, 77 S.Ct. 623 (finding disclosure necessary for a defendant's entrapment defense where

informer was only witness in a position to amplify or contradict testimony of government witnesses). In determining whether justification for an exception to the privilege exists, the District Court must balance the interests undergirding the privilege against the accused's fundamental right to a fair trial, taking into account all relevant circumstances (including the nature of the crime charged, the contours of the defenses asserted, the available means of proving the charges and defenses, and the significance of the informant's role). *United States v. Robinson*, 144 F.3d 104, 106 (1st Cir.1998) *citing Roviaro*, 353 U.S. at 62, 77 S.Ct. 623. The Defendant's need for disclosure must also be balanced against the personal safety of the witness. *United States v. Pena*, 17 F.Supp.2d 33, 37 (1998)(Neiman, M.J.) (*citing Roviaro*, 353 U.S. at 62, 77 S.Ct. 623).

The First Circuit has also stated that "when the government informant is not an actual participant or a witness to the offense, disclosure is required only in those exceptional cases where the defendant can point to some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information and the informant's private interest in his or her own safety." *Tzannos*, 460 F.3d at 139 (quoting *United States v. Martinez*, 922 F.2d 914, 921 (1st Cir.1991)). Such concrete circumstances exist in this case.

B. *The Balancing Of Interests Favors Disclosure of the Informant's Identity*

■ In light of the entrapment defense asserted, the identity of the informant is clearly relevant and helpful to the Defendant's defense. The Defendant cannot make out or prepare his entrapment defense if the Government does not disclose the identity of the informant, for absent evidence of actions by an agent of the Government, the Defendant has no entrapment defense.[3] *United States v. Gomez–Rojas*, 507 F.2d 1213, 1219 (5th Cir.1975) *citing Branzburg v. Hayes*, 408 U.S. 665, 698, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)("Where a defendant charges that a paid Government informer has entrapped him, *Roviaro* ordinarily demands disclosure of the informer's identity, since the defendant's entire defense rests upon allegations which the informer is in a unique position to affirm or deny."). Thus, in light of the recordings and the Defendant's assertion of an entrapment defense, the informant is not "merely a source—one who does little more than put a flea in an officer's ear." *Robinson*, 144 F.3d at 106.

The safety concerns posed by disclosure to the Defendant appear to be more speculative than real. Plainly, the Defendant already knows the informant's identity and personal information (and has so known for months). If the "Defendant were truly intent on creating a danger to [the informant], he would have been able to do so with other resources at hand." *Pena*, 17 F.Supp.2d at 37. In the circumstances of this case, the Defendant's need to know the identity of the informant overcomes the public interest in flow of confidential information from informants or their safety.[4] Nonetheless, because general public disclosure of the identity of the informant

---

**3.** This is not a case in which the Defendant is fishing for the identity of the informant. Under oath he has set out the basis for his entrapment defense, identified the individual he asserts entrapped him and seeks the informant's identity to confirm that the person with whom he communicated was the informant. The recordings the Defendant seeks corroborate his submissions on this point.

**4.** Although not necessary to the outcome of the *Roviaro* balancing test, the Court also

(as opposed to disclosure to the defense) could more significantly compromise the interests advanced by the Government, I will impose a protective order.

Accordingly, the Defendant's Motion is ALLOWED with regard to the disclosure of the identity of the informant, and the Government is hereby ordered to inform the Defendant whether or not the informant is the person identified in the affidavit supporting the Defendant's motion. Neither the Defendant nor counsel shall disclose to anyone else (other than to employees of defense counsel assisting with the preparation of the defense) the identity of the confidential informant, absent further Order of the Court. Because the Court has ordered the disclosure of the identity of the informant, the *Roviaro* considerations no longer apply to the Defendant's other requests for discovery.

### 3. The Defendant's Request for his Recorded Conversations

■ The recordings of the conversations between the Defendant and the informant implicate Federal Rule of Criminal Procedure 16(a)(1)(B)(I), which provides:

> Upon the defendant's request, the government must disclose to the defendant . . . any *relevant* written or recorded statement by the defendant if the statement is within the government's possession, custody, or control, and the attorney for the government knows—or

finds that the identity of the informant would be exculpatory evidence subject to disclosure within the *Brady* and *Strickler* framework discussed at p. 189–90, *infra*. If the informant is the individual asserted in the Defendant's affidavit, as all of the evidence suggests he is, that information is exculpatory because it potentially casts doubt on the Defendant's guilt or potentially negates the defendant's guilt concerning an essential element of the prosecution. *See* L.R. 116.2. That information is

through due diligence could know—that the statement exists. (emphasis added). Fed.R.Civ.P. 16(a)(1)(B)(I).

The Rule establishes four requirements for disclosure of information to defendants: first, the rule governs only a written or recorded statement of a defendant; second, the statement must be relevant; third, the Government must have possession, custody or control of the statement; and, fourth, the attorney for the Government must know of the statement's existence (or could know of it, with due diligence). In this case, all four requirements are met.

■ The Government has not disputed that the recordings at issue contain recorded statements of the Defendant. Recordings of a defendant's telephone conversations contain statements within the meaning of this provision. *United States v. Lanoue*, 71 F.3d 966, 973–74 (1st Cir. 1995).[5] Nor can the Rule "reasonably be read to allow the government to withhold [the non-defendant's] side of the conversation." *Id.* The statements are also admittedly in the possession of the Government (and thus known to it). The First Circuit considered the meaning of "relevance" in the context of this specific provision of Rule 16, it held that a statement is:

> relevant if it had 'any tendency to make the existence of any fact that [was] of consequence to the determination of the action more probable or less probable than it would be without the evidence.'

also "material" within the meaning of *Strickler* because withholding this information would have a reasonable probability of both thwarting defendant's announced (and only apparent) defense and affecting the verdict.

**5.** *Lanoue* discussed Rule 16(a)(1)(A). However, the portion of that subsection it considered was subsequently relocated, without any substantive change, in Rule 16(a)(1)(B). *See* Advisory Committee Notes to 2002 Amendments.

Fed.R.Evid. 401. Relevance is to be interpreted broadly in the context of Rule 16(a)(1)(A). *See* Fed.R.Crim.P. 16 advisory committee's note (rejecting narrow interpretation of defendant's right to discovery own statements). The rule gives a 'defendant virtually an absolute right' to his own recorded statements 'in the absence of highly unusual circumstances that would otherwise justify a protective order.' *Id.,* at 974 (*citing* 2 C. Wright, Federal Practice and Procedure § 253, at 46–47 (1982)).

■ The reason why the Government possesses a recorded statement of a defendant is immaterial to the application of Rule 16, so long as the conversation is relevant to the instant case. *Id.,* at 974–975. "Acceptance of the language for just what it says is dictated by the fundamental fairness of granting the accused equal access to his own words, no matter how the government came by them." *Id.,* (*quoting United States v. Caldwell,* 543 F.2d 1333, 1353 (D.C.Cir.1974)). Despite the opportunity afforded to it by the Court, the Government has not addressed Rule 16's application to the Defendant's Motion.[6]

■ "Ordinarily, a statement made by the defendant during the course of the investigation of the crime charged should be presumed to be subject to disclosure, unless it is clear that the statement cannot be relevant." *United States v. Bailleaux,*

685 F.2d 1105, 1114 (9th Cir.1982); *see also United States v. Isa,* 413 F.2d 244, 248 (7th Cir.1969) (holding that "a defendant has the right to an order permitting him to inspect his own written or recorded statements" absent a basis for a protective order). The statements at issue are relevant. Not only did they occur during the time period of the alleged conspiracy generally, but they occurred during the time period of the four specific sales alleged in the Indictment. In the conversations, the Defendant spoke with the Government's informant, the very person whose relationship with the Defendant facilitated the undercover agent's purchases from him (which purchases in turn form the basis for four of the five charges in the Indictment). The substance of the conversations also confirms their relevance. Among other topics, the Defendant and the informant discussed the undercover agent and whether he was a member of law enforcement, the Defendant's state of mind in dealing with the undercover agent, the timing of phone calls from the undercover agent, and the reasons why the undercover agent may have had difficulty reaching the Defendant. At one point, the informant tells the Defendant to call the undercover agent, and then later suggests that he do so. The statements are relevant both to the elements the Government must prove and to the entrapment defense which the Defendant affirms that he intends to assert.

---

**6.** The Government has submitted no written argument suggesting any other interpretation of the applicable provision of Rule 16. Neither party, in its initial submissions, briefed the application of Rule 16(a). At the hearing on the Motion, the Court raised the question of whether the Rule applied to that portion of the Defendant's request seeking the tape recordings of his conversations with the confidential information. Subsequently, the Court invited both parties to submit supplemental memoranda discussing the application, if any,

of the Rule to the Motion. Electronic Order of July 3, 2007. Although the Government submitted a supplemental memorandum responding to the Defendant's post-argument letter, its submission does not address Rule 16. Docket # 25. To the extent the Government may have suggested at the hearing on the Motion that a defendant is entitled only to exculpatory statements under Rule 16(a)(1)(B), the First Circuit has plainly rejected such an interpretation.

 The right of a defendant under Rule 16 to his own recorded statements is presumptive. In this case, the significance of the disclosure to the Defendant is great. The recordings contain information and evidence regarding the facts and circumstances of the offenses charged in the Indictment. Although Rule 16 entitles the Defendant to these recordings even absent his assertion of the entrapment defense, the recordings also bear significantly upon that defense, his only apparent defense. Although the content of the conversations appears to undermine the defense, under Rule 16 the Defendant is entitled to relevant evidence, even if inculpatory. He need not show that the statements are material or exculpatory. "Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process." *Lanoue*, 71 F.3d at 976.

*Roviaro* has no application to this request in light of my ruling on the request for disclosure of the identity of the informant. Nonetheless, for the sake of completeness, I will address *Roviaro* as it pertains to the recorded conversations. For largely the same reasons discussed above, the *Roviaro* balancing favors the defendant. He seeks disclosure of his own statements made during the period of criminal conduct alleged in the Indictment to a Government informant regarding the offenses charged. And, he knows and has known the identity of the informant for a substantial period of time, which in this case mitigates the safety concerns advanced by the Government.

Accordingly, the Defendant's motion is ALLOWED with respect to the recordings of the Defendant's conversations with the confidential informant.

### 4. The *Defendant's Remaining Requests*

In addition to his recorded statements, the Defendant also seeks discovery of the informant's plea agreement, of all of the Form 302 Reports of his debriefings with the Government relating to the case against him, and of all other material pertaining to the informant's cooperation with the Government, whether on this or any other case. The Defendant is entitled to these materials if they are either (1) "exculpatory" as defined by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, or (2) "material to preparing the defense" within the meaning of Rule 16(a)(1)(E)(I).

### A. *The Brady Framework*

 Under *Brady*, the Government must produce exculpatory evidence which is material to guilt or punishment. *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Materiality for *Brady* purposes is traditionally assessed from the vantage point of appellate review, and focuses upon whether or not there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), *quoting U.S. v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).[7]

---

**7.** Trial courts considering materiality under *Brady* have identified a difficulty applying this formulation, crafted in the post-trial appellate context, to the pretrial discovery setting. *See, e.g. United States v. Safavian*, 233 F.R.D. 12, 16–17 (D.D.C.2005) and cases cited therein;

B. *Discovery Mandated By Fed. R. Cr. P. 16(a)(1)(E)*

Federal Rule of Criminal Procedure 16(a)(1)(E) provides, in relevant part:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(I) the item is material to preparing the defense;

Fed. R. Cr. P. 16(a)(1)(E)(I).

The Supreme Court has explained that the phrase material to the preparation of the defendant's defense "means the defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Thus, the Court held that the Rule "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id.* at 463, 116 S.Ct. 1480. Nor is the Rule a mere restatement of *Brady*. "Although the Advisory Committee decid-

ed not to codify the Brady Rule," Advisory Committee's Notes on 1974 Amendment to Fed.R.Crim.P. 16(a)(1)(c), the meaning of the materiality requirement in this provision has been a matter of discussion in the courts. Judge Keeton has stated that "[materiality] for purposes of Rule 16 essentially tracks the *Brady* materiality rule," but he also cited a broader view of materiality and concluded that it was "unnecessary for [the Court] to decide whether or not to follow" the broader view on the facts of that case. *U.S. v. LaRouche Campaign*, 695 F.Supp., 1290 at 1306–07 (D.Mass.1988)(Keeton, J.). Subsequently, other courts have utilized materiality standards for Rule 16 which focus upon the usefulness of the information sought in defending the case. *See, e.g., United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir.1995)(A defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense); *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993)("Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense."); *United States v. Lloyd*, 992 F.2d 348, 351 (D.C.Cir.1993) (evidence is materi-

*cf. Report of the Judicial Members of the Committee Established to Review and Recommend Revisions of the Local Rules of the United States District Court for the District of Massachusetts Concerning Criminal Cases*, at 18 (Oct. 28, 1998)(noting that a "determination of the materiality of information helpful to the defendant may be more difficult to make reliably in the pretrial context than post-conviction"). The *Safavian* court stated that the *Brady* test in the pre-trial setting required judgments concerning matters,

"... that simply are unknown and unknowable before trial begins: which government witnesses will be available for trial, how they will testify and be evaluated by the jury, which objections to testimony and evidence the trial judge will sustain and which

he will overrule, what the nature of the defense will be, what witnesses and evidence will support that defense, what instructions the Court ultimately will give, what questions the jury may pose during deliberations (and how they may be answered), and whether the jury finds guilt on all counts or only on some (and which ones)". *Id.*, at 16.

Thus, the *Safavian* court reasoned, the relevant analysis before trial is whether the evidence at issue may be "favorable to the accused." *Id. citing United States v. Sudikoff*, 36 F.Supp.2d 1196, 1198–1199 (C.D.Cal. 1999); *United States v. Acosta*, 357 F.Supp.2d 1228, 1233 (D.Nev.2005); *United States v. Carter*, 313 F.Supp.2d 921, 924–25 (E.D.Wis. 2004).

al under Rule 16 "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal"); *United States v. Maniktala,* 934 F.2d 25, 28 (2d Cir.1991) ("There must be some indication that the pretrial disclosure of the disputed evidence would ... [enable] the defendant significantly to alter the quantum of proof in his favor."); *Stevens,* 985 F.2d at 1175 (The Rule 16(a)(1)(E)(I) standard for materiality require that evidence can "be used to counter the government's case or to bolster a defense."). Neither party has cited a First Circuit decision or District of Massachusetts decision defining the scope of materiality under this provision of Rule 16. Resolution of the Motion to Compel in this case does not turn on the differences between the various articulations of the materiality standard.

C. *Application of Rule 16 and Brady to the Cooperation Agreement and Promises, Rewards and Inducements Made to the Informant.*

■ The informant's cooperation agreement (as well as any promises, rewards or inducements made to him) are exculpatory under *Brady* and material to the preparation of the Defendant's defense within the meaning of Rule 16. The information concerning the informant's cooperation with the Government is significant and helpful to the Defendant in that it suggests a motive for him to engage in the improper conduct which the Defendant has alleged, under oath. It supports the Defendant's proffered entrapment defense, which itself attacks an essential element of the Government's case—*i.e.,* the Defendant's state of mind. Without evidence of the terms of the informant's relationship with the Government, i.e. any evidence establishing the informant's motive, in this case, there is a reasonable probability of a different outcome. Thus, in light of the Defendant's entrapment defense, the information is exculpatory and material under *Brady* and material under Rule 16.

Accordingly, the motion is ALLOWED with respect to the cooperation agreement, and documents concerning any promises, rewards or inducements made to the informant.

D. *Application of Rule 16 and Brady Frameworks to the Form 302 Reports Of Informant Debriefings.*

■ The Form 302 debriefing reports, on the record before the Court, are not exculpatory within the *Brady* framework. Although the Court has not reviewed these documents, according to the affidavit in support of the criminal complaint, the debriefing reports discuss the informant's allegations of other drug dealing activity by the Defendant. Docket # 1 at 4–5. This is inculpatory rather than exculpatory information and therefore the Defendant has no claim under *Brady* to this information.

■ The text of Rule 16, however, contains no limitation restricting its application to favorable information.[8] *United States v. Marshall,* 132 F.3d 63, 68 (D.C.Cir.1998) (rejecting government's argument that this provision applies only to exculpatory information). The debriefing reports are significant to the preparation of the Defendant's defense. The Defen-

**8.** I also note that in *Armstrong,* while considering a different type of discovery claim, the Supreme Court identified a "symmetry" within the three subsections of Rule 16(a)(1)(E) supporting the Court's application of the text of the Rule. *Armstrong,* 517 U.S. at 462, 116 S.Ct. 1480. Notably neither of the other two subsections limit disclosure to favorable or exculpatory items.

dant has affirmed that he will assert an entrapment defense. Docket # 29, ¶ 36. At trial, the Government, in response to that defense, bears the burden of establishing either a lack of inducement or the Defendant's predisposition.

In his affidavit, the Defendant admitted the sale of drugs and stated that absent inducement from the informant "I [Pesaturo] would NOT have sold drugs to the undercover agent." Docket # 29 at ¶ 35 (emphasis in original); *see also* Docket # 29 at ¶ 32 (stating "[a]fter supplying the undercover agent with Oxycodone the first time ...". As a result, predisposition evidence, whether elicited in the form of testimony from the informant, cross-examination of the defendant or the submission of other evidence, will be a central issue in the case at trial. There is a reasonable probability that the disclosure of this evidence will affect the outcome of the case. *See, e.g., DiBlasio,* 932 F.2d at 1042 (2nd Cir.1991)(finding informant's testimony not material to prosecutions' case, but material to entrapment defense because "testimony about events preceding and in between these crimes may be as material as that detailing their actual commission, or more so.")

In this circumstance, providing the Defendant with the opportunity to investigate and evaluate evidence of predisposition is important to the preparation of the entrapment defense and serves many of the considerations underlying Rule 16 generally. *See* Advisory Committee's Notes on 1974 Amendment of Fed.R.Crim.P. 16(a)(1)(A) (stating that "broad discovery contributes to the fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence.").[9]

Accordingly, the motion is ALLOWED with respect to the Form 302 Reports of the Government's debriefings of the informant regarding the defendant.

D. *Application of Rule 16 and Brady Frameworks to the Defendant's Request for Materials Relating the Informant's Cooperation on Other Cases.*

■ The Defendant has not established that documents containing information regarding the informant's activities pertaining to persons other than defendant are exculpatory or "material to the preparation of the defense." These documents do not pertain to the issues in the case. Accordingly, the Defendant's motion is DENIED with respect to these documents.

## CONCLUSION

For the foregoing reasons, the Motion to Compel (Docket # 20) is ALLOWED IN PART AND DENIED IN PART.[10] The Government shall, within ten days of this Order, disclose: (1) the recordings of the Defendant's conversations with the informant; (2) the identity of the informant; and, (3) the debriefing reports of the informant insofar as they pertain to the Defendant's alleged activities. Neither Defen-

---

9. Moreover, the informant also made statements to the Government concerning drug sales by the Defendant other than those made to the DEA agent, but which fall within the time period of the conspiracy charged in the Indictment. Docket # 1, at 4–5; Docket # 9, at 1.

10. The Government has not invoked the provisions of Rule 16(a)(2), therefore, I have not considered them.

dant nor his counsel shall disclose the identity of the informant absent further Order of the Court.

SO ORDERED.