The defendant was convicted, after a jury trial, of trafficking in fourteen to twenty-eight grams of heroin, G. L. c. 94C, § 32E(c )(1), and trafficking in fourteen to twenty-eight grams of cocaine, G. L. c. 94C, § 32E(b )(1). He raises two arguments in this direct appeal. First, he contends that it was an abuse of discretion to deny his motion for mistrial. Second, he contends that his pretrial motion to disclose the identity of a confidential informant should not have been denied without an in camera hearing. Because we conclude that under Roviaro v. United States, 353 U.S. 53 (1957), and its progeny, the averments of the defendant's affidavit, if credited, required "the judge to engage in Roviaro's 'balancing [of] the public interest in protecting the flow of information against the individual's right to prepare his [or her] defense,' taking into account 'the crime charged, the possible defenses, the possible significance of the [privileged] testimony, and other relevant factors," we remand for reconsideration of the defendant's motion under the framework set out in Commonwealth v. Bonnett, 472 Mass. 827, 848 (2015), but affirm the judgments.
Background. The charges were based on the discovery on December 10, 2010, of drugs in a vehicle (car) registered to the defendant's uncle. The defendant was known to use the car, and he was its driver and sole occupant on the date in question. The car was stopped by Worcester police, who had received information from Trooper George Berrios that a reliable confidential informant had reported that the defendant had a large amount of drugs in the car, and identified the car's make and license number with specificity, together with its approximate location.
The defendant moved in limine to exclude evidence concerning the reason for the motor vehicle stop.[2] That motion was allowed after the judge heard that the parties agreed that the Commonwealth would not elicit evidence about the confidential informant's tip, and that the defendant "would not be able to infer or imply about the legality of the stop." The Commonwealth requested, and the defendant agreed, that the jury be instructed that "[t]he reason for the motor vehicle stop is not material to the issue to be decided. Consistent with this, the judge instructed the jury at the beginning of the trial that they were not to speculate about the reason for the motor vehicle stop.
1. Motion for mistrial. The defendant argues that the trial judge abused his discretion when he denied the defendant's motion for mistrial, which was based on the following exchange that occurred during the direct examination of Officer Terence Gaffney, who located the defendant's car:
Q: "Did you make an observation of anyone approaching that vehicle?"
A: "Yes."
Q: "What did you observe about the person who approached the vehicle?"
A: "He fit the description of-"
Q: "What did you observe-in other words, height, weight, whatever?"
A: "He matched the-"
Q: "Let's move on."
No objection was lodged to the prosecutor's questions and, in any event, the questions were in our view unobjectionable. Nor did the defendant contemporaneously move to strike the officer's answers, a decision he described as tactical so as not to draw the jury's attention to the testimony. However, at the conclusion of the prosecutor's direct examination, the defendant moved for a mistrial because "despite the district attorney doing his best to cause the witness to stop answering, [the officer] referenced the defendant matching a description. And I think that there may have been some reaction from the jury. Or it didn't go unnoticed, I thought, as far as the jury was concerned." Defense counsel later stated that, although neither he nor his co-counsel observed any jury reaction to the testimony, his wife, who was a spectator in the courtroom, had. Neither the judge nor the prosecutor observed any jury reaction, but it appears that the prosecutor was not in a position to do so and the judge noted that he had deliberately avoided looking at the jury so as not to draw attention to the testimony.
After considering a variety of factors, which included that the prosecutor did not deliberately elicit the testimony and indeed twice cut the witness off, the brevity of the testimony, the absence of explicit reference to an informant, and the lack of contemporaneous objection, the judge denied the motion for mistrial, but struck the officer's answers and gave a commendably clear, direct, and comprehensive curative instruction. That instruction told the jury that the evidence from the officer was struck and not to be considered, that the reason for the stop was immaterial to the case, that they were not to speculate about the reason for the stop, and that the they were to focus only on whether the Commonwealth proved beyond a reasonable doubt that the defendant possessed the drugs in the car. The judge also repeated aspects of these instructions during his final charge.
"Whether to declare a mistrial is within the trial judge's discretion." Commonwealth v. Gallagher, 408 Mass. 510, 517 (1990). Here, the judge weighed all pertinent factors and carefully crafted a comprehensive and thoughtful response designed to preserve the defendant's right to a fair trial. See Commonwealth v. Copney, 468 Mass. 405, 415 (2014) (trial judge is "in the best position to assess any potential prejudice and to tailor an appropriate remedy"). "Where a party seeks a mistrial in response to the jury's exposure to inadmissible evidence, the judge may rely on curative instructions to correct any error and to remedy any prejudice.... As long as the judge's instructions are prompt and the jury do not again here the inadmissible evidence, as here, a mistrial is unnecessary." Commonwealth v. Garrey, 436 Mass. 422, 435 (2002).
2. Pretrial discovery motion. We next turn to the defendant's argument that his pretrial discovery motion seeking disclosure of the confidential informant's identity was erroneously denied without an in camera hearing. The predicate for the defendant's motion was his contention that he had no knowledge of the drugs in the car and that they must, therefore, have been planted there either by the confidential informant or by the police. The motion was supported by an affidavit from the defendant in which he attested to the following. During the summer of 2010 (several months before the events at issue here), the defendant had been stopped by a State trooper. The defendant was smoking marijuana while driving and, moreover, had "about ten bags of marijuana in [the] car in the open." The trooper told the defendant that he could go to jail for the marijuana and that he could get deported. The trooper suggested, however, that "this could be ironed out if [the defendant] cooperated." The trooper then placed a call to Trooper Berrios, and handed the phone to the defendant. This was the first time the defendant had spoken to Trooper Berrios, whom he noted spoke with a Puerto Rican accent. According to the defendant, Trooper Berrios stated that if the defendant cooperated with police, he would not be charged with the marijuana. Having been caught in possession of a large quantity of marijuana, the defendant was nervous and he accordingly agreed to work with Trooper Berrios and provided his cellular telephone (cell phone) number. The defendant was allowed leave and was not placed under arrest. The defendant later had second thoughts about cooperating and threw away his phone.
The defendant further attested that several days following his arrest, he received a call from Trooper Berrios at approximately 3:00-4:00 A.M. on a telephone with a different number from the one he had previously provided. The trooper said that he knew the defendant's location at that moment and that he needed the defendant to cooperate with him, and mentioned a list of people the trooper identified as drug dealers. When the defendant denied knowing the people on that list, the trooper threatened to have the defendant's wife and children deported. As soon as the defendant hung up, the trooper called the defendant's wife's telephone, another number the defendant had not provided to Trooper Berrios. Early the following morning, Trooper Berrios called the defendant's father as well, threatening to arrest him for helping the defendant.
Based on these allegations, the defendant stated that he believed the drugs (about which he claims he otherwise had no knowledge) were planted in his car in order to pressure him to become an informant for the police, and that the identity of the confidential information (if such a person existed) was material to this defense. Adopting the Commonwealth's argument that the confidential information was only a "tipster" and therefore that person's identity was not material to the Commonwealth's case, the judge denied the motion in a margin endorsement without addressing either whether the information was material to the defense or engaging in a balancing of interests.
"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.... The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Roviaro, 353 U.S. at 59. The privilege, however, is not impregnable. Its scope "is limited by its underlying purpose," and "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61.
Where, as here, a defendant requests that the privilege be set aside on the ground that it "interferes with a fair defence," Commonwealth v. Johnson, 365 Mass. 534, 544 (1974), he "is required to present 'some offering so that the trial judge may assess the materiality and relevancy of the disclosure to the defense, if that relevancy is not apparent from the nature of the case and the defense offered thereto.' " Bonnett, 472 Mass. at 847, quoting from Commonwealth v. Kelsey, 464 Mass. 315, 323 (2013). This is a "relatively undemanding" standard, ibid., in which the factual assertions in the defendant's affidavit are accepted as true for these purposes. See United States v. Pesaturo, 519 F. Supp. 2d 177, 184 (D. Mass. 2007) (accepting allegations of defendant's affidavit). See also Commonwealth v. Mello, 453 Mass. 760, 762 n.1 (2009).
The assertions of the defendant's affidavit, if credited, adequately raised a potential defense that the drugs were planted, because he had refused to become a police informant. See Commonwealth v. Healis, 31 Mass. App. Ct. 527, 530 (1991) (confidential informant's identity necessary where defense was that defendant had been "set up" by informant and police and drugs had been planted). The affidavit was not merely general or conclusory, but rather revealed a detailed basis for the potential defense. As a result, the judge was required to "engage in Roviaro's 'balancing [of] the public interest in protecting the flow of information against the individual's right to prepare his [or her] defense,' taking into account 'the crime charged, the possible defenses, the possible significance of the [privileged] testimony, and other relevant factors.' " Bonnett, supra at 848, quoting from Commonwealth v. Dias, 451 Mass. 463, 468-469 (2008).
As we have noted, no such balancing occurred here. "[T]here was no attempt by the judge at orderly appraisal of the actuality of any threat and the materiality of the [information] sought. Nor was any compromise considered that might allow disclosure while minimizing danger to the [informant]." Commonwealth v. Johnson, 365 Mass. at 546. For this reason, a remand is necessary to conduct the required orderly appraisal of the relevant factors in accordance with the framework set out in Bonnett. See Bonnett, supra at 850-851. We note that it is within the judge's discretion to determine what form those proceedings should take, including whether all or some of those proceedings should be in camera and whether defense counsel should be present. We do not mean to suggest what the outcome of the required balancing should be; our decision is simply that the allegations of the defendant's affidavit were sufficient to raise the materiality of the confidential informant's identity to his defense such that the defendant was entitled to have the required balancing of interests performed.
For these reasons, the judgments are affirmed, and the matter is remanded for further proceedings consistent with this decision.
So ordered.
Affirmed.

The defendant's earlier motion to suppress was denied.